# In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1342

DORIS G. GRIFFIN,

*Plaintiff-Appellant,*

v.

JOHN E. POTTER, Postmaster General,
United States Postal Service,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 0407—**Charles P. Kocoras**, *Chief Judge.*

_____

ARGUED AUGUST 6, 2003—DECIDED FEBRUARY 3, 2004

_____

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Doris Griffin brought suit alleging in relevant part that her former employer, the United States Postal Service, discriminated against her because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 629-34, and then retaliated when she complained, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. The district court granted summary judgment to the Postal Service, holding that Griffin had not established a prima facie case

of age discrimination or retaliation because the Postal Service's evidence of her unsatisfactory job performance was undisputed. We affirm the judgment, although we focus instead on Griffin's failure to establish that she suffered any adverse employment action.

## I. History

Griffin, who was born in 1939, began working for the Postal Service in 1964 at the Chicago District Office. From 1981 on she worked as an Equal Employment Opportunity counselor or investigator. In July 1997, while still working in this capacity, Griffin filed a formal EEO charge with the Postal Service, the first of two formal administrative charges at issue in this case. At the time Griffin already had three other administrative charges pending, and she consolidated all three into her July 1997 charge, in which she alleged discrimination due to race, sex, age, and disability, as well as retaliation. In an accompanying narrative, Griffin explained that her then-supervisor, Yvonne Coleman, had generally "harassed" her at work, refused her a parking spot close to the office while she recuperated from ankle surgery in 1996, turned down her requests to take annual leave and assigned her a disproportionate share of the office's more difficult EEO investigations after putting the entire staff on notice that no one could take leave until their backlogged work was current, and proposed to upper management in November 1996 that the Postal Service issue Griffin a written warning about her job performance. Griffin also asserted that Coleman had engaged in unspecified retaliation because she had written a December 1995 letter about the workings of her office and had disputed comments Coleman made about her performance in an April 1996 written warning.

In September 1997 Griffin filed the second formal EEO charge at issue in this appeal. Again she alleged discrimina-

tion due to race, sex, age, and disability, as well as retaliation for prior, unspecified EEO activity. This time Griffin's only factual predicate for alleging discrimination was that the Postal Service had not accommodated her temporary disability from the 1996 ankle surgery, and that in February 1997 upper management had approved the written warning proposed by supervisor Coleman in November 1996.

The Postal Service never finished investigating Griffin's two 1997 administrative charges. In July 2001, with the charges by then pending for almost four years, the Postal Service transferred Griffin from the Chicago District Office to the Great Lakes Area Office in Bloomingdale, Illinois, as part of the Postal Service's restructuring of its EEO complaint-resolution process. Griffin objected to this transfer and the following month filed with the Postal Service an informal, EEO "pre-complaint counseling" form alleging that the transfer had increased her commute time and was prompted by her age and a desire to retaliate for her 1997 administrative charges. In October the Postal Service alerted Griffin that it was ending its review of her informal filing because she had ignored the Postal Service's attempts to communicate with her by telephone and in writing during the 30-day processing period. At the same time the Postal Service warned Griffin that she had just 15 days to file a formal EEO charge. Griffin took no further action with the Postal Service.

Griffin then retired in January 2002 and promptly sued the Postal Service. Griffin alleged in her district court complaint that she had suffered age discrimination (she also cited discrimination based on a disability but has abandoned that claim on appeal) and retaliation in that the Postal Service had changed her work hours, denied her parking privileges given to other employees, cancelled her leave, disciplined her unfairly, assigned her extra and more difficult work, and repeatedly demeaned her in front of

coworkers. Griffin also alleged that she had been construc-
tively discharged because her resignation was prompted by
her belief that "she would never be treated fairly after her
complaints of discrimination and retaliation." Griffin said
nothing in her complaint about the transfer to
Bloomingdale, but she did refer to her informal EEO filing
concerning the transfer in a paragraph detailing prior
administrative action.

The Postal Service later moved for summary judgment.
Recognizing that Griffin was proceeding under the indirect
method as to both her discrimination and retaliation claims,
*see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),
the Postal Service first asserted that Griffin could not
establish a prima facie case of age discrimination because
she had not been performing her job satisfactorily. But as
evidence the Postal Service cited only the written warning
proposed in November 1996 and later endorsed by upper
management in February 1997, a November 1997 audit of
Griffin's EEO unit that appears to have identified systemic
problems not unique to Griffin, and unfavorable mid-year
and annual reviews of Griffin's performance in 2001 that
primarily criticize her failure to timely complete assigned
work. In addition, the Postal Service argued that Griffin
lacked evidence of an adverse employment action. Regard-
ing the transfer, the Postal Service cited Griffin's deposition
admissions that the purpose of the transfer had been to
afford her a better working environment, that the transfer
had not been a demotion, that Griffin objected to the
transfer solely because her commute time had increased,
and that she could have continued working for the Postal
Service instead of retiring. As to Griffin's retaliation claim,
the Postal Service similarly argued that Griffin could not
establish a prima facie case. Pointing out Griffin's failure to
follow through on her 2001 informal filing, the Postal
Service argued that she accordingly could not press a
retaliation claim based on any action not identified in her

1997 administrative charges. And, the Postal Service insisted, none of the harms complained of in Griffin's 1997 EEO charges had risen to the level of an actionable adverse action.

Griffin responded to the Postal Service's summary judgment motion. She argued that she had been meeting the Postal Service's legitimate expectations and submitted evidence that she received various awards in the years before filing her formal administrative charges and even afterward continued to receive merit raises. Griffin also argued that she had suffered an adverse employment action, citing principally her own testimony that the Postal Service had assigned her the most difficult EEO investigations and also assigned other work outside her job responsibilities; required her to do her coworkers' assignments; required her to work varying shifts instead of consistently putting her on just one of the three scheduled shifts; forced her to travel farther in comparison to her coworkers by transferring her to the Bloomingdale office; denied her annual leave; issued her letters of warning; subjected her to unreasonable demands, hostile criticism, and unprofessional behavior; denied her merit increases over five years; failed to accommodate her ankle injury; and substituted a "good" performance evaluation for a "very good" evaluation.

## II. Analysis

In granting summary judgment for the Postal Service, the district court reasoned that no reasonable jury could conclude that Griffin was meeting the Postal Service's legitimate performance expectations. In this court Griffin devotes her entire brief to this single subject, arguing that the adequacy of her job performance was disputed and that, regardless, her evidence established that "any performance deficiencies were caused by the antics and actions" of supervisor Coleman.

We review the grant of summary judgment *de novo* and view the evidence in the light most favorable to Griffin. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). To have established a prima facie case of age discrimination under the indirect method, Griffin was required to produce evidence that she (1) was over 40 years old; (2) was meeting the Postal Service's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than younger, similarly situated employees. *Id.* at 574. Similarly, to have established a prima facie case of retaliation under the indirect method, Griffin had to muster proof that she (1) engaged in statutorily protected activity; (2) was meeting the Postal Service's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in protected activity. *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). It is not enough for Griffin to focus on just one of these elements; at a minimum she was required to demonstrate a triable issue as to each element in order to have survived the Postal Service's motion for summary judgment. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1003 (7th Cir. 2002).

The events that Griffin characterizes as discriminatory or retaliatory occurred between 1996 and 2001, and therefore Griffin had to prove that she was meeting the Postal Service's legitimate expectations during that time period. *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 453 (7th Cir. 1998). Griffin submitted evidence that she received merit increases and cash performance awards through 2000, which, as Griffin contends, would seem indicative of the Postal Service's own conclusion that she was performing satisfactorily. *See Wohl v. Spectrum Mfg., Inc.*, 94 F.3d 353, 358 (7th Cir. 1996) (holding that summary judgment was inappropriate when the plaintiff submitted evidence that he received a raise just before he was fired). The Postal Service

responds that in late 1996 Griffin received a warning letter about excessive absenteeism and after that generally failed to fulfill the requirements of her job. But much of the Postal Service's evidence seems to focus on systemic problems not unique to Griffin, and apparently it was not until 2001 that Griffin first received a negative evaluation, which of course sheds no light on her earlier performance. But ultimately we need not decide whether the district court erred in concluding that the inadequacy of Griffin's job performance was not in dispute because we can readily affirm on the alternative ground that she suffered no materially adverse employment action. *See Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002). The Postal Service has always maintained that Griffin also lacked evidence of an adverse employment action—a position that it presses again here and that Griffin has left unanswered.

That silence is fatal, but we note that, even had Griffin argued the point, she could not establish that she suffered an actionable adverse employment action. Most of Griffin's complaints—some of them plainly trivial—relate to events that do not qualify. At summary judgment Griffin, who by her own account was the most experienced investigator in the office, argued that she suffered adverse employment actions when the Postal Service changed her shift in August 1996; lengthened her commute in July 2001 by transferring her to the Bloomingdale facility; unfairly disciplined her; substituted a favorable evaluation for a more favorable one; issued her letters of warning; assigned her to difficult cases and gave her additional work that she perceived as outside her normal job responsibilities; refused to approve annual leave requests when work was backlogged; and denied her a parking permit for approximately four days. An adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

An adverse employment action is one that significantly alters the terms and conditions of the employee's job, *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001), and none of these did, *see Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003) (harder work assignments); *Stutler*, 263 F.3d at 702-03 (lateral transfer without loss of benefits, increased commute); *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691-92 (7th Cir. 2001) (additional job responsibilities); *Grube v. Lau Indus.*, 257 F.3d 723, 728 (7th Cir. 2001) (altered work hours, negative performance evaluations, unfair reprimands); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001) (oral and written reprimands); *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000) (trivial matters); *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (refused preferred vacation schedule); *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (increased travel time).

Nor did Griffin establish that supervisor Coleman's alleged hostility amounted to an adverse employment action. General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive. *Hilt-Dyson*, 282 F.3d at 466. Griffin submitted evidence that at staff meetings over a two-month period Coleman commented that she was a "bad influence on the office" and that she thought she knew everything. Although the supervisor's comments may have created an "unpleasant" environment, these comments were not so severe and pervasive as to be actionable. *See id.*; *Speer v. Rand McNally & Co.*, 123 F.3d 658, 664 (7th Cir. 1997) (holding that plaintiff did not suffer a materially adverse employment action when her boss "yelled at her [and] did not make her feel as if she was part of the work group"). Further, Griffin's contention all along is that she was performing her job satisfactorily. *See Stutler*, 263 F.3d at 704 (noting that supervisor's conduct did not interfere with plaintiff's ability to do her job).

What is left is Griffin's allegations at summary judgment that she was "denied merit increases for five years amounting to about $20,000 compared to her co-workers" and that she left the Postal Service's employ because of her transfer to Bloomingdale and thus was constructively discharged. As to the former contention, the denial of a raise can constitute a materially adverse employment action if a raise would have been an expected element of the employee's salary and its denial cuts the salary in real terms. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115-16 (7th Cir. 2001); *Hunt v. City of Markham*, 219 F.3d 649, 654 (7th Cir. 2000). But Griffin offered nothing that supports this allegation; her sole evidence is an affidavit she gave during the administrative proceedings in which she claimed entitlement to $20,000 for unspecified "personal financial losses for 1996" but said nothing at all about being denied raises for several years. Moreover, Griffin never alleged in her complaint that the Postal Service has withheld raises from her, and she could not amend her complaint through allegations made in response to a motion for summary judgment. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *Speer*, 123 F.3d at 665.

Equally without merit is Griffin's claim of a constructive discharge, which can occur when an employer prompts a resignation by subjecting the employee to working conditions that a reasonable person would find unbearable. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002); *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). But in responding to the Postal Service's motion for summary judgment, Griffin admitted that her claim of a constructive discharge was based entirely on her dissatisfaction with having to work at the Bloomingdale facility, in particular because its location increased her commute. As we have said, the transfer— which involved no material change in duties or benefits— was not an adverse employment action, and thus it is frivolous for Griffin to

contend that it gave rise to a constructive discharge. *See Grube*, 257 F.3d at 728 (holding that a transfer to another shift, which was not an adverse employment action, would not support a constructive discharge claim).

### III. Conclusion

Because Griffin failed to demonstrate a genuine issue of material fact concerning whether she suffered an adverse employment action, the district court did not err in granting summary judgment for the Postal Service on her age discrimination and retaliation claims. Accordingly, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*