**Dorothy TAYLOR, Plaintiff–Appellant,**

v.

**COMPTROLLER'S OFFICE OF the State of ILLINOIS, Defendant–Appellee.**

**No. 04–2187.**

United States Court of Appeals, Seventh Circuit.

Argued March 2, 2005.

Decided March 9, 2005.

Dorothy L. Taylor, Springfield, IL, pro se.

Brett E. Legner, Office of the Attorney General, Chicago, IL, for Defendant–Appellee.

Before BAUER, EASTERBROOK, and SYKES, Circuit Judges.

### ORDER

Dorothy Taylor, an African American, sued her employer, the Illinois comptroller's office (IOC), under Title VII, 42 U.S.C. §§ 2000e *et seq.*, alleging race discrimination because she was not provided the same equipment and training as white coworkers. IOC hired Taylor in 1988, laid her off for economic reasons in 1996, but reinstated her in 1998 to a new unit with a new title following a consent agreement with her union. Taylor claims that during her first six months as an "office assistant" in the "obligations unit" following her reinstatement, the IOC discriminated against her in the following ways: (1) stationed her in high-traffic areas; (2) delayed in providing her a desk, computer, and telephone; and (3) did not fully train her to perform computer-related duties. The district court granted summary judgment because Taylor lacked evidence that she suffered an actionable adverse employment action. We affirm.

First, Taylor complains that IOC did not assign her a desk until about six months after her arrival, while two white office assistants in the unit, Alice Kern and Gary Hubbs, each sat at a desk equipped with a computer and telephone. Instead, even though at least one desk in the office was unoccupied, Taylor was initially stationed at a folding table that coworkers used for stacking mail and files. She says her presence at the table obstructed her coworkers from stacking, making her an "object of … scorn … as was indicated by their expressions and body language." After a few months she complained to her supervisor and a couple months later was assigned a desk. However, that desk was located in the path to the filing area, and she had to stand up whenever a coworker pushing a cart needed to pass.

Taylor did not receive a computer until after she was assigned a desk, and she complains that until that time she could not perform or even learn how to perform computer-related duties carried out by Kern and Hubbs. Specifically, she was unable to perform contract approvals for account specialists or to retrieve inventory information to facilitate her filing duties—both computer-related activities. Taylor says this made her less efficient than Kern and Hubbs and an "object of derision as communicated by others' facial expressions and body language." According to Taylor's written job description, however, none

of her time was allocated to activities requiring the use of a computer; almost all of her time was dedicated to sorting and filing government contracts. In contrast Kern and Hubbs' written job descriptions expressly allocated a percentage of their time to computer-related duties.

Even though Taylor experienced certain frustrations in performing her job, at her six-month performance evaluation in July 1998 her supervisor evaluated her performance as "meets all expectations." Around that time—the unit's busiest season—IOC hired two temporary employees and provided each with a computer. This prompted Taylor for the first time to request her own computer, which, as we have noted, she soon received. But because it was the unit's busiest season, she did not immediately have time to train to use it and says she was humiliated and frustrated that she continued to fall short of her coworkers' expectations. Taylor received her own telephone in 1999; until then she was able to use any available phone in the unit.

Taylor filed a race discrimination charge with the Illinois Department of Human Rights. IDHR dismissed the charge and the IDHR Chief Legal Counsel sustained the dismissal. An Illinois appellate court affirmed the IDHR Chief Legal Counsel's decision. Taylor then sued IOC, claiming race discrimination under Title VII. She alleged that IOC treated her worse than similarly situated white employees by not providing her the equipment and training necessary to complete her duties.

The district court granted summary judgment in favor of IOC. Given the absence of direct evidence of discrimination, the court analyzed Taylor's claims under the indirect method of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and held that Taylor had not established a prima facie case of discrimination because she lacked evidence that she suffered an adverse employment action. The court concluded that Taylor's alleged harms—IOC's delay in providing her a desk, telephone, computer, and computer training time—were not materially adverse.

Taylor argues before this court that she met the requirements of *McDonnell Douglas* because the delays in providing equipment and training combined to constitute an adverse employment action. Acknowledging that none of these actions independently rises to the level of being materially adverse, she contends that the district court erred in not considering whether the cumulative effect of her employment conditions was so degrading that it constituted adverse employment action. "When viewed together," she contends, IOC's delay in providing her a desk, phone, computer, and training, "especially when ... [these items] were available but unused merely steps away," caused her to be "humiliated—indeed, *degraded.*" And, she concludes, "[d]egrading conditions are adverse conditions."

We have identified three categories of cases that satisfy Title VII's adverse employment action requirement. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744–45 (7th Cir.2002). At issue here is the third category, comprising:

> Cases in which the employee is not moved to a different job or the skill requirements of his present job altered, but the *conditions* in which he works are changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment—an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet.

*Id.; see also Knox v. Indiana,* 93 F.3d 1327, 1334 (7th Cir.1996) (stating that scope of "adverse employment action" includes moving an employee "from a spacious, brightly lit office to a dingy closet").

Contrary to Taylor's assertion, the district judge did consider whether the conditions of Taylor's employment cumulatively constituted an adverse employment action and, quoting *Herrnreiter,* 315 F.3d at 743–44, specifically concluded that they did not. The district court explained, and we have repeatedly stated, that minor inconveniences or alterations of job responsibilities and subjective preferences like those of which Taylor complains are not actionable. *See, e.g., O'Neal v. City of Chicago,* 392 F.3d 909, 912–13 (7th Cir.2004); *McKenzie v. Milwaukee County,* 381 F.3d 619, 625–26 (7th Cir.2004); *Griffin v. Potter,* 356 F.3d 824, 829 (7th Cir.2004); *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir.2003); *Traylor v. Brown,* 295 F.3d 783, 788–89 (7th Cir.2002). Because Taylor lacks evidence that she suffered an adverse employment action, she cannot make out a prima facie case of discrimination.

Taylor also generally asserts that the district court erred in finding that she did not present enough circumstantial evidence of discrimination to proceed under the direct method because the disparate treatment already described raises an inference of a discriminatory motive. But whether she tries to show discrimination under Title VII by the direct or indirect method, Taylor still must show that she suffered a materially adverse employment action. *See, e.g., Rhodes v. Ill. Dept. of Transp.* 359 F.3d 498, 504 (7th Cir.2004). She has not done so.

AFFIRMED.