**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted August 18, 2005[*]
Decided August 18, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-1454

| | |
|---|---|
| MICHAEL A. THOMAS, | Appeal from the United States |
| *Plaintiff-Appellant*, | District Court for the Northern |
| | District of Illinois, Eastern Division |
| *v.* | |
| | No. 02 C 3576 |
| JOHN E. POTTER, | |
| *Defendant-Appellee.* | James B. Zagel, |
| | *Judge*. |

**O R D E R**

Michael Thomas brought this suit under Title VII, alleging that the United States Postal Service retaliated and discriminated against him based on his gender when it changed his shift schedule.  The district court granted summary judgment for the Postal Service, concluding that a mere change in shift schedules which does not materially affect the terms of employment cannot constitute an adverse employment action.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(a)(2).

Thomas began working for the Postal Service as a custodian in the "maintenance craft" department on the day shift in 1988. Later, believing that he had been passed over for a promotion or transfer, Thomas filed a complaint with the EEOC. As a result of that complaint, in 1994 he and the Postal Service entered into a settlement agreement stipulating that he would be promoted to a "maintenance support clerk." The promotion did not alter Thomas' work schedule; he continued to work the day shift. In 1997, after the department had relocated to a new facility, Thomas' supervisor transferred him to the night shift; five women and four men, however, were allowed to stay on the day shift. Compared to Thomas, each of these employees had less seniority in the "maintenance craft" department but more seniority as a maintenance support clerk, the higher-level job. The transfer of personnel to the new facility was generally subject to a memorandum of understanding with the postal workers' union that might have prioritized Thomas' maintenance craft seniority and allowed him to keep his day shift, but Thomas does not contest the postal service's contention in its statement of material facts that this understanding did not extend to maintenance support clerks.

Thomas then filed the complaint in this suit, alleging that the Postal Service discriminated against him by altering his shift while allowing female employees with less seniority to keep their day shifts. He also claimed that his shift change was in retaliation for filing the complaint with the EEOC that resulted in the 1994 settlement. Thomas later amended his complaint to add a claim that the Postal Service retaliated against him by disregarding the 1994 settlement, in that the Service took nearly two years to complete the paperwork making his promotion permanent.

The district court granted summary judgment for the Postal Service, determining that "a decision to change an employee's work shift, without a change in the employee's title, pay or responsibilities, does not rise to the level of an adverse employment action." The court determined that Thomas had not presented a *prima facie* case of discrimination or retaliation, citing *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 728-29 (7th Cir. 2001), in which we held that an employer's decision to change a female employee's working hours was not an adverse employment action because her pay and job title remained the same and she suffered no significantly diminished job responsibilities. *Id.*

On appeal, Thomas' most discernible argument is that the district court erred by determining that he had not suffered an adverse employment action. He seems to suggest that his shift change was an adverse employment action because it caused him to suffer severe depression that necessitated medical treatment and counseling. For the purposes of Title VII, however, an adverse employment action must be "materially adverse," in that it "significantly alters the terms and conditions of the employee's job." *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (holding that a postal employee did not suffer an adverse employment action

when the postal service, among other actions, changed her shift). While we may assume for the purposes of summary judgment that Thomas actually suffered emotional distress from his shift change, Title VII does not provide a remedy for actions like those here that do not affect an employee's terms of employment. *See Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). Nor would Title VII be the appropriate remedy for any failure to implement the memorandum of understanding.

Thomas also seems to argue that the Postal Service carried out an adverse employment action when it broke the terms of the 1994 EEOC settlement by promoting him to maintenance supply clerk without processing the paperwork to make his promotion permanent. Again, Thomas fails to show how the terms or conditions of his employment were materially affected. *See Griffin*, 356 F.3d at 829. In any event, by failing to present this claim to the EEOC, Thomas failed to exhaust his administrative remedies, and thus this claim is not properly before us. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004).

Because Thomas has not shown a genuine issue of material fact as to whether he suffered an adverse employment action, the grant of summary judgment for the Postal Service was not in error. The judgment of the district court is AFFIRMED.