**Nancy A. ARMERY, Plaintiff,**

v.

**John POTTER, Postmaster General, United States Postal Service, Defendant.**

**Civil Action No. 05–40212–FDS.**

United States District Court, D. Massachusetts.

July 24, 2007.

---

Chester V. Shea, III, Worcester, MA, for Plaintiff.

Christopher Alberto, United States Attorney's Office, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

SAYLOR, District Judge.

This is an action alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff Nancy A. Armery, a female postal employee, alleges that she was subjected to unlawful gender discrimination when her days off were changed from consecutive days (Sunday and Monday) to non-consecutive days (Sunday and Tuesday). She further alleges that as a result of her complaints of discrimination, she was subjected to retaliation when (1) certain workplace responsibilities were taken away; (2) her desk was removed; (3) she was required to provide medical documentation to support an absence from work; and (4) she was issued a letter of warning concerning her attendance.

Pending before the Court is defendant's motion to dismiss and for summary judgment. For the reasons stated below, the motion will be granted.

## I. *Factual Background* [1]

### A. *Plaintiff's Employment at the Post Office*

Nancy A. Armery is a 62–year–old female who has been employed for approximately 27 years by the United States Postal Service in Shrewsbury, Massachusetts. According to the amended complaint, she suffers from anxiety, depression, stress disorder, and Raynaud's disease. The complaint further alleges that in 1987 the Equal Employment Opportunity Commission ("EEOC") ordered the Postal Service to provide her with an accommodation for her disabilities, "resulting in the retroactive reassigning of [her] window/distribution position to a distribution/window position, eliminating [her] window duties." (Armery Aff. ¶ 6).[2]

Before October 2002, plaintiff worked Tuesday through Saturday as a mail processing clerk, with Sunday and Monday off. She had apparently held this position and schedule from the time of the EEOC's 1987 decision.

### B. *Restructuring of Clerk Positions*

In March 2002, John Volpigno was appointed Postmaster of Shrewsbury. Shortly after his appointment to the position, Volpigno decided that the Shrewsbury post office could be more efficiently operated. Specifically, he concluded that because of the way the office was staffed and positions were scheduled, distribution clerks—who were charged with preparing,

sorting, and distributing mail to the letter carriers to deliver it—were often unable to get the mail to the carriers in a timely fashion. Furthermore, he concluded that on Mondays—the day of the week when mail volume is historically at its heaviest—there were fewer distribution clerks scheduled to work than were needed. Finally, he concluded that as a result of the implementation of automated mail processing equipment at an adjacent Postal Service processing plant, the need for distribution clerks to sort mail manually was drastically reduced.

In response to these perceived inefficiencies, Volpigno decided to change the way in which the clerk function at the Shrewsbury post office was staffed. He contacted Frank Rigiero, president of the Central Massachusetts Area Local of the American Postal Workers Union, and explained his concerns. As a result, Rigiero agreed, on behalf of his constituents, to amend the local collective bargaining agreement between the Postal Service and the union to restructure the staff at the post office.

On September 23, 2002, the Postal Service and the union entered into a "Memorandum of Agreement." According to the agreement, clerk staffing at the Shrewsbury post office would be completely overhauled. All existing clerk positions would be abolished, and a new set of clerk positions (with new duties, hours, and days off) would be established. These new positions

---

1. For purposes of defendant's motion to dismiss, the Court will accept all well-pleaded allegations set forth in the amended complaint as true. *See Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000).

   As to the motion for summary judgment, however, plaintiff has failed to submit a concise statement of material facts as to which she contends there exists a genuine issue to be tried, as required by Local Rule 56.1 of this District. Nor does she indicate which, if

any, of the facts set forth in defendant's "Statement of Undisputed Material Facts" she disputes. Accordingly, the facts provided in defendant's statement will be deemed admitted by plaintiff.

2. Window duties apparently involve providing service to retail customers; distribution duties involve the sorting and distribution of mail.

would be posted for bidding, and (consistent with the national collective bargaining agreement between the union and the Postal Service) employees would apply or "bid" for them based upon their relative seniority.

The restructuring process called for by the agreement took place between October 4 and October 14, 2002. All positions were posted via electronic or telephone bidding, and positions were awarded according to seniority by the Postal Service's District Human Resources Office in North Reading.

### C. Plaintiff's New Position

As noted, prior to the restructuring, plaintiff held a position as a distribution clerk. She had no window duties, and she had Sundays and Mondays off. Among the new positions created during the restructuring were four clerk positions without window duties. Each of the four positions had one off-day on Sunday and another on a different day of the week (Monday through Thursday, respectively).

As a result of the bidding process, a male employee senior to plaintiff was awarded the new clerk position without window duties that had Sundays and Mondays off. Due to her seniority—she was the fourth most senior clerk in the Shrewsbury post office—plaintiff was awarded the position without window duties and Sundays and Tuesdays off.

An additional clerk position with Sundays and Mondays off was available, but that position included window duties.[3] Based on her seniority, plaintiff could have successfully bid on that position. She contends, however, that her disabilities precluded her from performing the window duties associated with the position, and therefore she did not bid on it. As a result, the position was awarded to a male employee with less seniority than plaintiff.

### D. Removal of Plaintiff's Desk and Job Responsibilities

According to plaintiff, on September 5, 2003, she was at her desk performing the "mark-up" duties, which consisted of reviewing and editing undeliverable mail. Plaintiff had performed mark-up duties for the previous 14 years, and the work was considered a preferred assignment.

Plaintiff alleges that Volpigno approached her and told her, in the presence of her co-workers, that she would no longer need the desk at which she was working and that she should remove her personal belongings from it. He further instructed her to begin working on the "unwanted bulk mail," which involved reviewing bulk mail from the carriers before discarding it to ensure that no first-class mail was accidentally discarded. According to plaintiff, as the second-most-senior distribution clerk (and fourth-most-senior clerk overall), she was entitled to the preferred assignment. However, Volpigno began assigning the mark-up duties to less-senior employees.

The desk was not returned to plaintiff, nor were her mark-up duties ever restored. Plaintiff further contends that no other individuals were treated in this way.

### E. Plaintiff's Absence from Work

Plaintiff was absent from work from September 8 through September 24, 2003. She provided Volpigno with a note from her physician, which indicated that she was

---

**3.** There were six additional clerk positions with Saturdays and Sundays off, all of which included window duties.

"suffering from insomnia, anxiety and poor concentration because of work stress," and that she should be excused from work on these dates. (Amend.Compl.¶ 21).

Plaintiff returned to work on September 25. Upon her return, Volpigno asked to speak with her about a certified letter that he had sent her requesting that she provide further documentation for her absence. He then ordered her to leave work. Plaintiff did not receive the certified letter requesting additional documentation until September 26.

Plaintiff contends that the physician's note she provided was sufficient medical documentation for an absence pursuant to the Postal Service's Employee and Labor Relations Manual, Parts 513.361–513.364. She further contends that no other employees who have had absences of more than three days and less than 21 days have been required to provide additional documentation or have been ordered to leave work.

### F. *Letter of Warning*

On January 16, 2004, plaintiff was issued an unsigned "Letter of Warning," dated January 14, 2004, for "failure to be regular in attendance." (Amend.Compl.¶ 25). The letter was based on absences when plaintiff was sick with bronchitis.

Plaintiff contends that prior to being issued the letter, she neither had an official discussion nor had she been placed on the restricted sick leave list, as required by the Employee and Labor Relations Manual. She also contends that she provided medical documentation for this absence upon returning to work. Finally, plaintiff contends that other employees had been absent for longer periods of time, but had not received such letters.

4. Plaintiff had previously filed an EEOC complaint in November 1993. That administra-

### G. *Plaintiff's Administrative Claims*

#### 1. *Discrimination Complaint*

Plaintiff filed a formal complaint of discrimination with the EEOC on January 28, 2003.[4] Specifically, she alleged that her employer had discriminated against her on the basis of gender, age, and disability when, in October 2002, the Postal Service forced her to work a different schedule in an alleged attempt to force her to retire. Plaintiff did not assert claims of unlawful retaliation in that complaint.

In July 2003, plaintiff requested a hearing before an EEOC administrative judge. On December 11, the assigned judge dismissed the complaint without holding the requested hearing. Thereafter, on January 22, 2004, plaintiff appealed the decision to the EEOC's Office of Federal Operations, which affirmed the dismissal on June 15, 2005. On August 8, 2005, plaintiff requested that the Office of Federal Operations reconsider its decision. That request was denied on September 15, 2005.

#### 2. *Retaliation Complaint*

Plaintiff filed an additional EEOC complaint on November 10, 2003. In that complaint, she alleged that she had been subjected to unlawful retaliation as a result of her prior EEOC activity. In particular, she alleged that the removal of her desk and re-assignment of her mark-up duties, as well as Volpigno's demand that she provide additional medical documentation when she was absent from work, were in retaliation for protected activity. On January 16, 2004, plaintiff amended her complaint to allege that she had been issued a letter of warning as retaliation for her protected activity.

tive claim, however, is apparently not relevant to the present action.

Upon completion of the EEOC's investigation of her claim in November 2004, plaintiff was informed of her right to request a hearing before an EEOC administrative judge or to request a final agency decision without a hearing. Plaintiff elected the latter option on January 4, 2005. On February 8, 2005, the Postal Service issued its final agency decision, concluding that plaintiff had failed to establish her claims of retaliation. Plaintiff and her counsel were advised that she had the right to further pursue the complaint by filing an appeal with the EEOC within 30 days, or by bringing suit in the appropriate United States District Court within 90 days of her receipt of the decision. It appears that plaintiff took neither course of action.[5]

## II. *Procedural History*

Plaintiff filed the present action on December 14, 2005, *pro se.* On July 13, 2006, she filed, through counsel, a four-count amended complaint alleging gender discrimination (Count I) and unlawful retaliation (Counts II, III, and IV) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Defendant has now moved to dismiss the amended complaint pursuant to Fed. R.Civ.P. 12(b)(6). Specifically, defendant contends that Count I fails to establish a *prima facie* case of gender discrimination, and that Counts II, III, and IV should be dismissed for failure to timely file suit following exhaustion of plaintiff's administrative remedies. Alternatively, defendant has moved for summary judgment as to Count I.

## III. *Analysis*

Defendant has moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). As to Count I, defendant contends that plaintiff has not been subjected to an adverse employment action by the Postal Service and therefore cannot establish a *prima facie* case of gender discrimination. As to Counts II, III, and IV, defendant contends that dismissal is warranted because plaintiff did not timely file suit following exhaustion of her administrative remedies. Although defendant styles his request for relief as a Rule 12(b)(6) motion to dismiss, defendant relies on materials outside the pleadings—specifically, affidavits and exhibits submitted in support of his motion—in making these arguments. Because of this reliance, defendant's motion is more properly analyzed as one for summary judgment under Fed. R.Civ.P. 56(c). In any event, defendant seeks summary judgment in the alternative as to Count I.

### A. *Standard of Review*

■■■ The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery, and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the entire record in the light most hospitable to the non-moving party

---

**5.** Plaintiff requested EEOC counseling in October 2005, alleging that she had been harassed in retaliation for her prior protected activities. On December 19, plaintiff was notified of her right to file a formal complaint with the EEOC in connection with these allegations. However, no such complaint was filed.

and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

### B. *Count I*

In Count I, plaintiff contends that the Postal Service discriminated against her on the basis of gender when it eliminated her consecutive days off. Where no direct evidence of discriminatory animus and causation is presented, a plaintiff may establish those elements circumstantially, using the three-stage burden-shifting method of proof. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 33 (1st Cir. 2001).

First, the plaintiff must establish a *prima facie* case of gender discrimination. To establish a *prima facie* case, plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for the job; (3) that the employer took an adverse employment action against her; and (4) that the position remained open or was filled by a person with similar qualifications. *See Kosereis v. Rhode Island,* 331 F.3d 207, 212–13 (1st Cir.2003). The employer may rebut the presumption of discrimination created by the *prima facie* case by articulating a legitimate, non-discriminatory reason for the termination and producing some credible evidence to support that reason. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Finally, the plaintiff may submit evidence to show that the defendant's articulated reason is pretextual. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097.

In this case, it is undisputed that plaintiff has satisfied the first two requirements of a *prima facie* case: she is a woman and, at the time her position was restructured, she was qualified for her position as a distribution clerk. Defendant contends, however, that plaintiff has failed to meet the third prong of this analysis—that is, that she has not demonstrated that she suffered an adverse employment action. Plaintiff responds that she was subjected to an adverse employment action when her position was changed from having Sundays and Mondays off to having Sundays and Tuesdays off.

To rise to the level of an adverse employment action, an action must materially change the conditions of plaintiff's employment. *Gu v. Boston Police Dep't,* 312 F.3d 6, 14 (1st Cir.2002). "Determining whether an action is materially adverse necessarily requires a case-by-case inquiry" that is "cast in objective terms." *Blackie v. Maine,* 75 F.3d 716, 725 (1st Cir.1996). As the First Circuit has noted, "[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Id.* Thus, "a transfer or reassignment that involves only minor changes in working conditions normally does not constitute an adverse employment action. Otherwise every trivial personnel action that an irritable ... employee did not like would form the basis of a discrimination suit." *Marrero v. Goya of P. R., Inc.,* 304 F.3d 7, 23 (1st Cir.2002) (quotation and internal citations omitted).

Here, plaintiff does not contend—and has presented no evidence to suggest—that, as a result of the October 2002 restructuring, she was terminated, demoted, or otherwise had her salary, benefits, or job responsibilities decreased. Rather, the record indicates that following the restructuring, she successfully bid into the same position with the same terms and conditions, but with Sundays and Tuesdays

off, instead of Sundays and Mondays. As a general matter, a schedule change does not constitute the type of materially adverse action required to maintain a claim of employment discrimination. *See, e.g., Griffin v. Potter,* 356 F.3d 824, 829 (7th Cir.2004); *Ruhling v. Tribune Co.,* No. CV 04–2430, 2007 WL 28283, at *10, (E.D.N.Y. Jan. 3, 2007) ("[A] schedule change standing alone does not constitute an adverse employment action."). It is at least arguable, however, that the schedule change at issue here—which effectively eliminated plaintiff's two-day weekend—rises to the level of an adverse employment action. *But see Williams v. Potter,* No. 3:03 CV 1640, 2007 WL 247716, at * 4 (D.Conn. Jan. 29, 2007) (holding that change in schedule—from working 6:00 a.m. to 2:30 p.m. with Sundays and Mondays off, to working 7:30 a.m. to 4:00 p.m. with Sundays and Tuesdays off—did not constitute adverse employment action).

■ Even assuming, however, plaintiff could make out a *prima facie* case, summary judgment would still be appropriate, as she has presented no evidence to rebut defendant's legitimate, non-discriminatory reason for the change in plaintiff's schedule. Defendant has offered evidence to establish that plaintiff's days off were changed, not because of gender discrimination, but rather because of (1) the employer's business needs; (2) plaintiff's seniority level; and (3) plaintiff's inability to work window duties due to her disabilities.

■ To defeat summary judgment in light of defendant's proffered non-discriminatory reason, plaintiff must set forth sufficient evidence that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves,* 530 U.S. at 143, 120

S.Ct. 2097. Plaintiff offers no such evidence, but instead merely states that defendant "has not provided any evidence as to why eliminating Plaintiff's consecutive days off was a necessary part of the reorganization." (Pl.'s Opp'n Mot. Summ. J. at 10). The burden, however, is on plaintiff to present evidence of pretext, not on the employer to show that its business decision was sound. As the First Circuit has indicated,

> *McDonnell Douglas* leaves the burden of persuasion at all times with the plaintiff, and the employer's burden to "articulate" a legitimate, nondiscriminatory reason is not a burden to persuade the trier that he was in fact motivated by that reason and not by a discriminatory one. Rather it is a burden of production—*i.e.,* a burden to *articulate or state* a valid reason, following which the complainant must show that the reason so articulated or stated is a mere pretext or "cover-up" for what was in truth a discriminatory purpose.

*Loeb v. Textron, Inc.,* 600 F.2d 1003, 1011–12 (1st Cir.1979) (emphasis in original). Plaintiff has simply failed to meet her burden of persuasion. Absent evidence rebutting defendant's legitimate, non-discriminatory reason for its action, summary judgment is appropriate.[6]

### C. *Counts II, III, and IV*

Counts II, III, and IV of the amended complaint allege that after she complained of discrimination, plaintiff was subjected to unlawful retaliation (1) when Volpigno took away her desk; (2) when he eliminated her mark-up duties; (3) when he demanded that she provide additional medical documentation in support of her September

---

**6.** In her opposition, plaintiff also argues that summary judgment should not be granted as to her claims of age discrimination and disability discrimination. No such age or disability discrimination claims appear, however, in her amended complaint.

2003 absence; and (4) when she was issued a letter of warning in January 2004. Defendant contends that these claims are time-barred, as plaintiff failed to timely file suit following exhaustion of her administrative remedies.

To be timely, an employment discrimination complaint against the federal government under Title VII must be filed "[w]ithin 90 days of receipt of notice of final action taken by a department. . . ." 42 U.S.C. § 2000e–16(c). This 90–day window is not a jurisdictional prerequisite to file a lawsuit in federal court; rather, it is the functional equivalent of a statute of limitations. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

The record presently before the Court, viewed in the light most favorable to plaintiff, indicates that no genuine of material fact exists as to the timeliness of plaintiff's retaliation claims. As noted above, plaintiff presented her retaliation claims to the EEOC in a complaint filed November 10, 2003. The Postal Service's final agency decision—along with a notice advising plaintiff of her right to file a civil action in the appropriate United States District Court within 90 days of her receipt of the decision—was mailed to plaintiff and her counsel on February 8, 2005. The presumed date of receipt is February 11. *See* Fed.R.Civ.P. 6(e); *see also Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Accordingly, she was required to file her civil action by May 12, 2005. Plaintiff, however, did not file the present suit until December 14, 2005, more than 10 months later.

The Court concludes that plaintiff did not timely file her retaliation claims in this Court following exhaustion of her administrative remedies, as required by 42 U.S.C. § 2000e–16(c). Accordingly, summary judgment will enter for defendant on Counts II, III, and IV.

## IV. *Conclusion*

For the foregoing reasons, defendant's motion to dismiss and for summary judgment is GRANTED.

**So Ordered.**