In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1152

ELAINE SCAIFE,

*Plaintiff-Appellant,*

*v.*

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS
and DENIS R. MCDONOUGH, Secretary of Veterans Affairs,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cv-02853-TWP-TAB — **Tanya Walton Pratt**, *Chief Judge.*

ARGUED NOVEMBER 8, 2021 — DECIDED SEPTEMBER 27, 2022

Before SCUDDER, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* Elaine Scaife worked as a Human Resources Classifier at the Roudebush Veterans Affairs Medical Center in Indianapolis. While there, a department lead called her a racial slur outside of her presence and her supervisor purportedly treated her differently based on her gender. Scaife complained to human resources, but the

human resources officer responded with a counseling email disapproving of Scaife's approach to handling workplace problems. Scaife received this counseling email a few weeks after she had already filed an internal Equal Employment Opportunity (EEO) complaint claiming a hostile work environment. She later transferred to a different VA facility and sued her employer for retaliation, constructive discharge, and a hostile work environment based on gender and race. The district court granted summary judgment for her employer on all claims. We affirm.

**I**

In reviewing the district court's grant of summary judgment in favor of Scaife's employer, we construe all facts and draw all inferences in the light most favorable to Scaife. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Scaife is an African-American woman who began working as a Human Resources Specialist at Roudebush in July 2010. As a Human Resources Specialist, Scaife focused on job classification—she determined the appropriate title, series, and pay grade for jobs within the VA. Scaife always worked at or above the legitimate expectations of her employer and received "Outstanding" or "Excellent" ratings on her annual performance reviews.

Roughly five to six years after starting her position, Gavin Earp, a white male, became Scaife's immediate supervisor. Earp transferred from a VA medical facility in Danville, Illinois, where he was reportedly known for mistreating female employees. According to Scaife, Earp displayed this same behavior at Roudebush. For example, Scaife noticed that Earp never yelled at a male classifier who made mistakes, even

when those mistakes were brought to Earp's attention. Meanwhile, Earp demeaned Scaife during conversations, threatened her job, and accused her of performing her job illegally. Scaife recalls three different occasions when Earp "was rude to" and "aggressively" yelled at her. On one occasion, Earp yelled so loud that a co-worker sent Scaife an email asking if she needed help. This same co-worker later testified that Earp could be "[a]rgumentative" with men and women alike.

In August 2016, Earp told Scaife and another black female classifier that, in light of upper management's increased scrutiny into the classifications program, he wanted them to start routing all classification actions to him for review. He later told them that they needed to be more flexible and less bureaucratic in their classification determinations; in other words, he wanted them to classify certain positions higher if told to do so. When Scaife inquired whether doing so would violate rules and regulations, Earp became "aggressive" and stated that he could be disciplined if he failed to do what upper management told him to do. Scaife understood this statement as a threat that she too would be disciplined if she did not "loosen classifications," even if illegal.

In September 2016, Earp asked Scaife to rate a Northern Indiana HR Specialist position. When Scaife classified the position lower than Earp would have liked, he stormed into Scaife's office, yelled at her, and accused her of breaking the law. Earp later returned to yell at Scaife again. Scaife sought assistance from Michael Knutson who worked at the VA's national classifying office and had previously classified the same Northern Indiana HR Specialist position in 2006. Knutson testified that Earp was "asking [Scaife] to violate the law" in classifying the Northern Indiana position. Following the

incident with Earp, Scaife went to an EEO officer to inquire about the EEO process for addressing a hostile work environment. She also sent text messages about the incident to Earp's direct supervisor, Human Resources Officer (HRO) Chari Weddle. In the text messages, Scaife expressed that Earp created a hostile work environment for her.

Also in September 2016, a co-worker informed Scaife that the Chief of the Police Service, Brian Fogg, a white male, called Scaife the N-word during a meeting in February of that year. Captain Roman Holowka, who was present during the meeting, later confirmed this for Scaife. Captain Holowka explained to Scaife that around that time, Chief Fogg wanted Scaife to classify a Criminal Investigator position at a particular grade level, but when she refused to do this, Chief Fogg called Scaife a "stupid fucking n****r." Upon hearing this from Captain Holowka and her co-worker, Scaife was "devastated" and reported the derogatory statement to HRO Weddle. During this time, Scaife also heard from other VA employees that Chief Fogg had a history of racial insensitivity.

On October 14, 2016, the VA received a notice that Scaife filed EEO charges against it. Shortly thereafter, on October 25, 2016, HRO Weddle sent Scaife a formal counseling email. In the email, HRO Weddle stated that Scaife, for the second time, had inappropriately interjected her "personal opinion in place of [her] professional opinion" when discussing classifications, including in her text messages to HRO Weddle about classifying the Northern Indiana HR Specialist position. HRO Weddle informed Scaife that she is "expected to exercise good judgment with respect to identifying urgent matters." HRO Weddle explained that although the email did "not constitute a disciplinary action," it would be placed in Scaife's personnel

file and "may be used to determine an appropriate penalty should further administrative action be considered."

Scaife later applied for and accepted an offer for the same classifier position at a VA center in California with the same pay. The new position allowed her to work remotely from her Indianapolis home five days a week. After transferring positions, Scaife sued the VA under Title VII of the Civil Rights Act of 1964, claiming a race and gender-based hostile work environment, retaliation, and constructive discharge. At summary judgment, the district court ruled in favor of the VA. The district court concluded that although Chief Fogg's one-time use of a racial epithet was highly offensive and unquestionably uncivil, it was not enough to trigger Title VII liability. The district court also concluded that Scaife could not show a gender-based hostile work environment given the incidents she described with her supervisor, nor could she show that she was retaliated against and constructively discharged. Scaife filed the instant appeal.

## II

We review the district court's order granting summary judgment de novo. *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 812 (7th Cir. 2022). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We draw all justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Hostile Work Environment

Scaife first argues that she provided enough evidence on both her race-based and gender-based hostile work

environment claims to survive summary judgment, either individually or in the aggregate. Title VII prohibits employers from discriminating against employees based on race or gender. 42 U.S.C. § 2000e–2(a)(1). A work environment is hostile under Title VII "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To prove a hostile work environment claim based on either race or gender, an employee must show: (1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014).

As most relevant here, courts consider the totality of the circumstances when determining whether conduct is severe or pervasive. *See Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013). This includes (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it is directed at the victim. *Id.*

### 1. Race-based hostile work environment

Scaife asserts that hearing from her co-workers that Chief Fogg, a supervisor in another department, called her a "stupid fucking n****r", is enough to trigger Title VII liability. It goes without saying that the N-word is an egregious racial epithet. *Smith v. Ill. Dept't of Transp.*, 936 F.3d 554, 561 (7th Cir.

2019); *Paschall*, 28 F.4th at 815 ("No other word in the English language so powerfully and instantly calls to mind our country's long and brutal struggle to overcome racism and discrimination against African-Americans." (citation omitted)). Because the N-word is egregious, we are not concerned with the number of times the epithet is used. *See Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002); *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004); *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022). A one-time use of the epithet can in some circumstances warrant Title VII liability. *Paschall*, 28 F.4th at 815.

Here, however, Scaife is unable to show that Chief Fogg's use of the N-word was sufficiently severe or pervasive when considering the totality of the circumstances, which is our charge in evaluating her claim. To begin, Scaife heard about Chief Fogg's slur from a co-worker. Although racial epithets do not always have to be stated directly to a plaintiff to create an objectively hostile work environment, *see Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 638–39 (7th Cir. 2019), remarks that are stated directly to the plaintiff weigh heavier than when a plaintiff hears them secondhand. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004). Second, Scaife heard about Chief Fogg's use of the racial slur several months after it was uttered. Specifically, Chief Fogg made the offensive statement in February, and Scaife did not find out until September. Outside of this, there is no evidence that Scaife ever heard Chief Fogg or anyone else make any racially derogatory statements in her presence. Third, Scaife's reliance on Chief Fogg's history of racial insensitivity with individuals at his current and former job does very little to bolster the race-based hostile work environment claim she has raised. *See Smith v. Ne. Illinois Univ.*, 388 F.3d 559, 567 (7th Cir. 2004).

While of course relevant, "second-hand harassment" is "not as great as the impact of harassment" directed at Scaife herself. *Id.*

Chief Fogg's position is also critical to the analysis. Scaife was understandably "devastated" when she learned that a department lead used a racial slur to describe her, but Chief Fogg did not have direct supervisory authority over her. We have previously noted that a supervisor's use of a racial slur impacts the work environment far more severely than a co-equal's use. *See Gates*, 916 F.3d at 638 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). This has typically referred to direct supervisors as opposed to non-direct supervisors, like Chief Fogg. *See id.* ("[W]hen the harassment involves such appalling racist language in comments made directly to employees by *their* supervisors, we have not affirmed summary judgment for employers."); *see also Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018) (weight given to the fact that offender was "a supervisor with direct authority over" employee). The conduct of a non-direct supervisor or a department lead, like Chief Fogg, should undoubtedly be given more weight than an employee's co-equal. *See id.*; *but see Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 598 (7th Cir. 2014) (manager of a different department considered co-worker to employee in another department). By virtue of his position as Chief of the Police Service at Roudebush, his conduct has more weight in the analysis than a peer or co-equal. At the same time, a harasser who has direct supervisory control over an employee continues to maintain more weight in the analysis. When considered alongside the other factors, the fact that Chief Fogg did not have direct supervisory control over Scaife is yet another weakness in her claim.

Given the totality of circumstances, Scaife has failed to show that Chief Fogg's use of the N-word outside of her presence, eight months prior, was severe enough for a jury to find that she experienced a hostile work environment based on race.

### 2. Gender-based hostile work environment

Scaife faces a similar fate when it comes to her hostile work environment claim based on gender: Scaife fails to provide sufficient evidence that the alleged harassment was based on her gender or that the alleged harassment was severe.

Scaife claims that Earp, her direct supervisor, threatened her, requested that she break the law, and consistently yelled at her—all creating a hostile work environment. Scaife, however, has failed to show that these incidents were based on gender. Though the alleged conduct need not "consist of pressure for sex, intimate touching, or a barrage of deeply offensive sexual comments," the "demeaning, ostracizing, or even terrorizing" conduct must still be related to gender. *Cf. EEOC v. Costco Wholesale Corp.*, 903 F.3d 618 (7th Cir. 2018) (no summary judgment for employer where a customer subjected employee to unwelcome romantic and sexual advances). The evidence here does not suffice. Although Scaife testified that Earp did not ask male classifiers to break the law and did not yell at a male classifier who made mistakes, the record reflects that Earp argued with men and women alike. *See, e.g., Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998) (denying Title VII liability because supervisor "yelled at her, as he yelled at other workers"). And the arguments Earp had with both men and women were usually related to work issues. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 841 (7th Cir. 2009) (no objective hostile work environment where

supervisor's comments related to employee's work habits or alleged lack of sophistication, and he made these comments to both male and female employees).

Moreover, even if Scaife could tie Earp's conduct to her gender, Scaife failed to provide sufficient evidence that Earp's conduct, though unprofessional, was severe or pervasive. Scaife always worked at or above the legitimate expectations of her employer, receiving an "Outstanding" or "Excellent" on her annual performance rating, and the record does not otherwise reflect that Earp's conduct interfered with her work performance. Performing work well is not dispositive; it is only one factor among many in the calculus. *See Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018) ("[r]esilient employees who manage to perform well in trying circumstances may still prove" a hostile work environment). However, it is *a* factor. *See Alexander*, 739 F.3d at 982. Additionally, there is no evidence that Earp physically threatened or humiliated her. In short, based on all the evidence, Scaife has failed to show harassment based on gender or that the alleged conduct was severe or pervasive.

### 3. *Hostile work environment based on race and gender*

Scaife maintains that her race-based and gender-based claims must be considered in the aggregate, and that when they are, she has shown a hostile work environment. We have previously noted that "[c]ourts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rise to the level of being severe or pervasive." *Costco*, 903 F.3d at 626 (citation omitted). Thus, when a plaintiff claims that he or she is suffering a hostile work environment based on the conduct of supervisors and coworkers, all instances of harassment by all parties are

relevant to proving that an environment is sufficiently severe or pervasive. *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000). But this does not mean that courts automatically lump into the analysis the behavior of one type of harasser (here, Chief Fogg) with the behavior of a different type of harasser (here, Earp). *See id.* ("If a plaintiff pursues a hostile work environment claim based on the behavior of a supervisor, evidence of harassment by a coworker logically must be tied somehow to the supervisor for it to be relevant and admissible.").

Even if we combine the incidents Scaife complained of involving Chief Fogg and Earp, Scaife has failed to show a hostile work environment. Viewing the record in the light most favorable to Scaife, Earp threatened Scaife's job and encouraged her to act illegally, but the evidence shows that this was not related to her gender or sufficiently severe as to alter her working conditions. After Scaife initiated the EEO process against Earp, a co-worker informed her about unquestionably offensive statements that Chief Fogg uttered eight months prior. Even when considered in the aggregate, this is not enough to show that "the workplace was sufficiently severe or pervasive to alter the conditions of [Scaife's] employment and create an abusive working environment." *Harris*, 510 U.S. at 21. Scaife, therefore, has failed to show that she endured a hostile work environment based on both race and gender.

## B. Retaliation

Next, Scaife claims that the VA retaliated against her for filing an EEO complaint. To prove retaliation under Title VII, a plaintiff must show: (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected

expression and the adverse action. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996). A plaintiff may offer circumstantial evidence of intentional retaliation, "including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007). There is no dispute that Scaife participated in a protected activity when she initiated the EEO process regarding Earp and Chief Fogg; where she stumbles is on the second and third elements.

An adverse action may be shown when there is a negative performance review and paycheck shortages. *See Boumedhi*, 489 F.3d at 791–93. But a documented reprimand alone is not an adverse action "[a]bsent some tangible job consequence." *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (finding that two counseling statements, both of which stop short of disciplining but admonish employee to improve, did not constitute an adverse employment action); *see also Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004) (negative evaluation or admonishment not an adverse job action). Here, although Scaife received a written counseling email shortly after she initiated an internal EEO complaint, the email did not come with a low performance rating or even a pay cut. It therefore cannot, standing alone, constitute an adverse action. *See id.*; *Boumedhi*, 489 F.3d at 791–93. Absent evidence that she suffered an adverse action, Scaife cannot sustain a claim for retaliation.

## C. Constructive Discharge

Finally, Scaife argues that she was constructively discharged from work. A plaintiff can typically show

constructive discharge in two ways. *See Ziccarelli v. Dart*, 35 F.4th 1079, 1091 (7th Cir. 2022) (citation omitted). Under the first, a plaintiff must "demonstrate a discriminatory work environment even more egregious than the high standard for hostile work environment." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008). As we concluded above, Scaife cannot demonstrate a hostile work environment claim based on race and gender, so she is unable to prove a constructive discharge claim that involves a higher standard.

Under the second, a plaintiff must show that she was forced to resign because her "working conditions [became] so intolerable that a reasonable person would have felt compelled to resign." *Stamey v. Forest River, Inc*, 37 F.4th 1220, 1225 (7th Cir. 2022) (citation omitted). Working conditions become intolerable when an "employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the [] employee resigns." *Fischer*, 519 F.3d at 409. "In other words, constructive discharge [] occurs where, based on an employer's actions, 'the handwriting [was] on the wall' and the axe was about to fall." *Id.* (citation omitted).

Here, Scaife may have received a written counseling email, but nothing in that email indicated to Scaife that her time at the VA was coming to an end. Her job security was not in peril, nor were her job prospects: she applied for and accepted the same position, for the same pay, with a different VA facility. *See, e.g., Fischer*, 519 F.3d at 410 (transfer not materially adverse when the new position allowed employee to maintain her current title, salary, benefits, and primary responsibilities); *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004) (no constructive discharge where there was no material change in duties or benefits). Scaife cannot leave her old job

for a new one with the same employer, without any apparent repercussion, and establish a constructive discharge claim absent evidence that she was forced out. Scaife has failed to show constructive discharge.

### III

For the reasons stated above, we AFFIRM the district court's judgment.