NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200056-U

NO. 4-20-0056

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 9, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| TONY BRUMMETT, | ) | Petition for Review of an |
| Petitioner-Appellant, | ) | Order of the Illinois Human |
| v. | ) | Rights Commission |
| ILLINOIS HUMAN RIGHTS COMMISSION; | ) | |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS; | ) | No. 2019-SF-0327 |
| KENCO LOGISTICS SERVICES, LLC; JOHN | ) | |
| THACKER; ERIC MORITZ; MELISSA ROWCLIFF; | ) | |
| STEVE RASO; KENT MEAGHER; and AARON | ) | |
| GILES, | ) | |
| Respondents-Appellees. | ) | |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding the Illinois Human Rights Commission
did not abuse its discretion in sustaining the dismissal of petitioner's charges of
unlawful harassment, discrimination, and retaliation against his former employer.

¶ 2    Petitioner, Tony Brummett, filed charges alleging unlawful harassment,

discrimination, and retaliation against his former employer, Kenco Logistics Services, LLC

(Kenco). The Illinois Department of Human Rights (Department) dismissed petitioner's charges,

and the Illinois Human Rights Commission (Commission) sustained the Department's dismissal.

Petitioner appeals, arguing the Commission erred in sustaining the dismissal of his charges. We

affirm.

¶ 3                              I. BACKGROUND

¶ 4        In September 2018, pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2016)), petitioner filed five charges with the Department, alleging Kenco harassed him due to his race (black) (count A), subjected him to unequal terms and conditions of employment due to his race and in retaliation for him opposing unlawful discrimination (counts B and C), and intimidated him due to his race and in retaliation for opposing unlawful discrimination (counts D and E).

¶ 5                    1. *Department's Investigation and Recommendation*

¶ 6        The Department prepared an "Investigative Report" on petitioner's allegations, which revealed the following. Kenco is a third-party logistics company providing warehousing and logistics support services to other businesses. In June 2018, John Thacker, Kenco's general manager, hired petitioner for the position of operations supervisor at Kenco's new facility in Decatur, Illinois. In addition to Thacker, petitioner also reported to Eric Moritz, Kenco's operations manager. In his role at Kenco, petitioner supervised 25 employees including Aaron Giles, a team lead. Kent Meagher, who was also an operations supervisor, worked third shift, while petitioner worked second. Thacker, Moritz, Giles, and Meagher are white, and petitioner is black.

¶ 7        Petitioner alleged Meagher began harassing him in July 2018. Meagher, who supervised the shift after petitioner's, typically arrived early to ensure any problems were resolved before the shift change. Petitioner stated although he was an "excellent" supervisor, Meagher harshly criticized his work. For example, Meagher would "get in [petitioner's] face" and say: "You are not doing this right"; "Did you not understand?"; "Let me tell you in a simple way so you understand"; "I don't know why you were hired without training"; and "You can't learn." According to Meagher, petitioner once asked, "Why are you harassing me on this?", to

which Meagher replied he was not harassing him but rather trying to show him how to do his job properly. Meagher stated petitioner consistently failed to complete shift transition procedures, did not communicate well with others, overlooked safety protocols, and often shifted blame for problems to others.

¶ 8 Petitioner alleged Giles also began harassing him in July 2018. During this time, Thacker asked petitioner to appoint a new team lead. When petitioner asked the team members to let him know if they were interested in the position, Giles responded "rudely" that he was already the team lead. After this meeting, petitioner stated Giles began making inappropriate comments to him on a daily basis, such as "You are a stupid a***" and "You look like a f*** drunk." Petitioner stated when he asked Giles to stop, he would walk off and ignore him. Petitioner believed Giles acted this way because petitioner was a black person in a supervisory position.

¶ 9 In July 2018, petitioner reported Giles's behavior to a Kenco human resources representative, Melissa Rowcliff, who agreed to investigate the problem. After speaking to Giles, Rowcliff informed petitioner that Giles was upset by petitioner's efforts to replace him as a team lead. When petitioner expressed his intent to discipline Giles, Rowcliff explained that before an employee may be formally disciplined, the human resources department was required to investigate whether discipline was warranted under the circumstances. Petitioner did not inform human resources of his belief Giles was harassing him due to his race. Following the investigation, petitioner was not allowed to discipline Giles. Petitioner claimed he had been allowed to discipline several black employees in the past, and he therefore believed he was not allowed to discipline Giles because he is white.

¶ 10       Steve Raso, Kenco's human resources manager, stated the transition after Kenco's acquisition of the Decatur facility was "difficult" and there were "a lot of issues" due to the short time frame they had to open it. Raso noted Kenco hired several employees from the prior owner of the facility, including Giles. Giles had complained to Raso in July 2018 that petitioner had "disrespected" him by replacing him as team lead. Raso and Rowcliff each attempted to coach petitioner and Giles to work as a team.

¶ 11       Meagher stated his comments to petitioner were never about his race and denied making any of the allegedly harassing comments to petitioner. According to Meagher, he once confronted petitioner about his discovery of a skid of shims that had spilled during petitioner's shift. Meagher took a picture of the spill and sent it to both petitioner and Thacker. Thacker asked petitioner to clean it up, but Meagher discovered it was still there the next day. After Meagher sent another picture to Thacker, petitioner accused Meagher of lying, claiming it was a different skid. Meagher stated petitioner often blamed problems on others or on the previous shift.

¶ 12       Thacker stated he and Moritz had both noticed petitioner was not performing well in his position from "almost the beginning of his employment." Thacker noted petitioner had difficulty working with other employees, including Giles. He and Moritz verbally coached petitioner about his performance, but he had not improved. Accordingly, they agreed the proper course of action was to contact the human resources department to develop a performance improvement plan ("PIP").

¶ 13       Raso explained a PIP is not a form of discipline but rather a tool used by the operations and human resources departments "to try to help the employee succeed." Raso stated

in the course of his employment with Kenco, he had presented at least three white employees with PIPs, including Moritz.

¶ 14        In September 2018, petitioner met with Thacker, Moritz, and Raso. Petitioner thought the purpose of the meeting was to discuss Giles, but he was instead presented with the PIP. During this conversation, Raso gave petitioner the same "canned" speech he gives to every employee who receives a PIP, which includes a request not to interrupt him while he explains the plan and that the employee will have the opportunity to ask questions afterwards. Raso also gave petitioner a separation agreement, which he explained was an option if petitioner did not want to pursue the PIP. Petitioner stated Raso told him he did not believe petitioner was capable of completing the requirements of the plan within 30 days. Petitioner asked if he could go home and think about his options, and Raso agreed. Raso stated he had been developing the PIP for petitioner prior to receiving petitioner's complaints about Giles. Petitioner alleged he was intimidated by Thacker, Moritz, and Raso into accepting the separation agreement because he is black and in retaliation for complaining to human resources and management about Giles.

¶ 15        Based on the information compiled in its investigative report, the Department recommended all counts be dismissed based on a lack of substantial evidence.

¶ 16                            2. *Commission's Order*

¶ 17        Petitioner filed a timely request for review, and the Commission entered a written order sustaining the Department's dismissal in January 2020. In its order, the Commission found the following.

¶ 18        Regarding count A, the Commission found petitioner failed to present any evidence he was harassed due to his race. Specifically, it found there was no evidence Giles or Meagher made any comment or took any action because petitioner is black. At most, the

evidence showed Giles was "insubordinate" and Meagher was "rude"—not that they engaged in racial harassment against petitioner. On count B, the Commission found that being asked to get along with Giles and not being allowed to discipline him did not constitute an adverse action. On count C, the Commission again found Kenco's refusal to allow petitioner to discipline Giles did not constitute an adverse action for purposes of a retaliation claim. On counts D and E, the Commission concluded, even assuming petitioner stated *prima facie* claims for discrimination and retaliation, Kenco proffered legitimate, nondiscriminatory reasons for its actions. The Commission further concluded there was no evidence Kenco's reasons for these actions were a pretext for racial discrimination against petitioner.

¶ 19    Following the Commission's order, petitioner appealed to this court. See Ill. S. Ct. R. 335(a) (eff. July 1, 2017); 775 ILCS 5/8-111(B)(1) (West 2018) ("Any [petitioner] or respondent may apply for and obtain judicial review of a final order of the Commission entered under this Act by filing a petition for review in the Appellate Court ***.").

¶ 20    This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22    In his petition for direct administrative review, petitioner argues this court must reverse the Commission's order sustaining the dismissal of his charges because he presented substantial evidence of racial harassment, discrimination, and retaliation. Specifically, petitioner argues the Department overlooked many "inconsistencies" in the responses Kenco provided during the investigation. The Commission argues this court should uphold its order because it did not abuse its discretion in sustaining the Department's dismissal of petitioner's charges based on a lack of substantial evidence. We agree with the Commission.

¶ 23                            A. The Act and Standard of Review

¶ 24   The Act provides it is a civil rights violation for any employer "to act with respect to *** discharge [or] discipline *** on the basis of unlawful discrimination ***." 775 ILCS 5/2-102(A) (West 2018). "Unlawful discrimination" means, in part, discrimination against a person because of that person's race, color, ancestry, or sex. *Id.* § 1-103(Q). It is also a civil rights violation to "[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination ***." *Id.* § 6-101(A). Where "a civil rights violation allegedly has been committed, a charge *** may be filed with the Department by an aggrieved party ***." *Id.* § 7A-102(A)(1). Once a charge has been filed, "the Department shall conduct an investigation sufficient to determine whether the allegations set forth in the charge are supported by substantial evidence ***." *Id.* § 7A-102(C)(1). If not supported by substantial evidence, the charge must be dismissed, and the petitioner must then be informed of his right to seek review of the dismissal order before the Commission. *Id.* § 7A-102(D)(3). If the Commission sustains the dismissal, the petitioner may appeal directly to this court from the Commission's order. *Id.* § 8-111(B)(1); Ill. S. Ct. R. 335(a) (eff. July 1, 2017).

¶ 25   This court reviews the Commission's order for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32, 974 N.E.2d 385. "Under the abuse of discretion standard, the court should not disturb the Commission's decision unless it is arbitrary or capricious" or "where no reasonable man could agree with the position of the [Commission]." *Id.* ¶ 33. "A decision is arbitrary or capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.*

¶ 26          B. Employment Discrimination Generally

¶ 27　　　　When analyzing employment discrimination charges brought under the Act, we follow the framework set forth in federal caselaw relating to federal anti-discrimination statutes, including, as relevant here, Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e *et seq.* (1982)). See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178, 545 N.E.2d 684, 687 (1989) (stating claims under the Human Rights Act are to be evaluated in accordance with federal decisions interpreting federal anti-discrimination laws).

¶ 28　　　　Discrimination can be proved through either direct or indirect evidence. *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 536, 736 N.E.2d 1150, 1157 (2000). Direct evidence of discrimination is evidence an employer "placed substantial reliance" on a prohibited factor—such as petitioner's race, age, or disability—in making its employment decision. See *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790, 755 N.E.2d 51, 65 (2001). Where, as in this case, direct evidence is not available, the petitioner may use indirect evidence. *Sola*, 316 Ill. App. 3d at 536.

¶ 29　　　　To prove discrimination indirectly, Illinois courts follow the three-part test announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and adopted by the Illinois Supreme Court in *Zaderaka*, 131 Ill. 2d at 178-79. The employee must first establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. *Zaderaka*, 131 Ill. 2d at 178-79. If the employee establishes a *prima facie* case, a rebuttable presumption arises that the employer unlawfully discriminated against the employee, which the employer may rebut by providing a legitimate, nondiscriminatory reason for its adverse employment decision. *Id.* at 179. Finally, if the employer rebuts the presumption, the employee must prove by a preponderance of the evidence that the employer's proffered reason was merely pretext for unlawful discrimination. *Id.*

¶ 30                                    C. This Case

¶ 31        In this case, the Commission agreed with the Department that petitioner failed to state a *prima facie* case for discrimination under any of the five alleged bases. We address each of them in turn.

¶ 32                                    1. *Harassment*

¶ 33        We turn first to petitioner's harassment claim (count A).

¶ 34        A hostile work environment claim based on race-based harassment contains the following elements: (1) the employee was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by anti-discrimination laws; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability. *Smith v. Illinois Department of Transportation*, 936 F.3d 554, 560 (7th Cir. 2019).

¶ 35        Here, the Commission did not abuse its discretion in sustaining the dismissal of petitioner's harassment claim because petitioner's claim fails at the second prong. Taking petitioner's allegations of Meagher's and Giles's behavior as true, "petitioner [did] not allege that either Giles or Meagher made any comments, or took any actions, connected to his race." We further agree with the Commission that at most, "Giles was insubordinate and Meagher was rude." While petitioner may have found their comments—*e.g.*, "You're a f*** drunk," and "Let me tell you in a simple way so you understand"—to be insulting or offensive, he failed to present any evidence the comments were motivated by racial prejudice. Accordingly, the Commission's determination petitioner failed to state a *prima facie* claim for harassment was not arbitrary, and we find no abuse of discretion.

¶ 36                                    2. *Counts B and C*

¶ 37        We turn next to petitioner's claims he was subjected to unequal terms and conditions of his employment when he was not allowed to discipline Giles, a white employee, (count B), in retaliation for complaining to management about Giles's alleged harassment (count C).

¶ 38                              a. Discrimination

¶ 39        "To establish a *prima facie* case of employment discrimination, the petitioner must first show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably." *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 919, 936 N.E.2d 623, 640 (2010). "A materially adverse employment action is 'one that significantly alters the terms and conditions of the employee's job' " and "include[s] things such as hiring, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Id.* at 919 (quoting *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004)).

¶ 40        Here, the Commission did not abuse its discretion in sustaining the dismissal of petitioner's discrimination claim because he did not suffer an adverse employment action. Although petitioner may have believed Giles's insubordinate behavior warranted disciplinary action, the human resources department's denial of petitioner's request does not constitute an adverse employment action under the Act. Petitioner was not demoted, his salary was not lowered, and his job responsibilities and benefits remained the same. The "mere inconvenience" of being asked to get along with Giles did not significantly alter the terms and conditions of, or responsibilities associated with, petitioner's employment at Kenco. (Internal quotation marks

omitted.) See *Hoffelt v. Department of Human Rights*, 367 Ill. App. 3d 628, 633, 867 N.E.2d 14, 18 (2006).

¶ 41                                             b. Retaliation

¶ 42        In order to establish a *prima facie* case of retaliation under the Act, petitioner was required to show: (1) he was engaged in a protected activity; (2) his employer committed a material adverse act against him; and (3) a causal nexus existed between the protected activity and the adverse act. *Id.* at 634. As noted in the Commission's order, the standard for determining whether an employer's act is "materially adverse" is less demanding in retaliation cases than discrimination cases. See *id.* at 635-36. Under this more relaxed standard, the petitioner must show "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (Internal quotation marks omitted.) *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "[P]etty slights, minor annoyances, and simple lack of good manners" are not typically considered actions that would deter a reasonable employee from lodging a discrimination complaint. *Id.*

¶ 43        Here, the Commission did not abuse its discretion in sustaining the dismissal of petitioner's retaliation claim because he again failed to establish he was subjected to a "material adverse act"—even under the less demanding standard. As the Commission stated, Kenco merely refused to allow petitioner to "handle an insubordinate employee" in the manner he preferred. This "petty slight," which may have resulted in "minor annoyance" to petitioner, is not the type of act which would deter a reasonable employee from filing an employment discrimination claim under these circumstances. *See id.*

¶ 44                                         3. *Counts D and E*

¶ 45　　　　Finally, we turn to petitioner's claims he was intimidated into signing the separation agreement because he is black (count D) and in retaliation for complaining about Giles's and Meagher's racial harassment (count E).

¶ 46　　　　As noted by the Commission in its order, "intimidation" is not a cognizable, separate claim under the Act. We will therefore review these claims, as the Commission did, under the same discrimination and retaliation standards set forth above.

¶ 47　　　　We agree with the Commission that even assuming, *arguendo*, petitioner established *prima facie* claims of discrimination and retaliation, Kenco rebutted the presumption of discrimination with legitimate, nondiscriminatory reasons for its actions. Specifically, Raso stated he had been developing a PIP for petitioner due to his poor work performance and attitude prior to him complaining to Rowcliff about Giles. Meagher stated petitioner consistently failed to complete shift transition procedures, did not communicate well with others, overlooked safety protocols, and often shifted blame for problems to others. Thacker also stated he noticed issues with petitioner's performance almost immediately after he started in June 2018. In turn, petitioner failed to provide any evidence Kenco's cited reasons for issuing the PIP and separation agreement were merely pretext for racial discrimination. We find no abuse of discretion.

¶ 48　　　　　　　　　　　　III. CONCLUSION

¶ 49　　　　For the reasons stated, we affirm the Commission's order.

¶ 50　　　　Affirmed.