NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200451-U

NOS. 4-20-0451, 4-20-0452 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 16, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| TONY BRUMMETT, | ) | Petition for Review of an |
|     Petitioner, | ) | Order of the Illinois Human |
|     v.    (No. 4-20-0451) | ) | Rights Commission |
| ILLINOIS HUMAN RIGHTS COMMISSION; | ) | |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS; | ) | No. 2019-SF-0645 |
| CHIEF LEGAL COUNSEL, NADINE WICHERN; | ) | |
| KENCO LOGISTICS SERVICES LLC; JOHN | ) | |
| THACKER; ERIC MORITZ; MELISSA ROWCLIFF; | ) | |
| STEVE RASO; and AARON GILES, | ) | |
|     Respondents. | ) | |
| | ) | |
| ———————————————— | ) | |
| TONY BRUMMETT, | ) | |
|     Petitioner, | ) | |
|     v.    (No. 4-20-0452) | ) | No. 2019-SF-0736 |
| ILLINOIS HUMAN RIGHTS COMMISSION; | ) | |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS; | ) | |
| CHIEF LEGAL COUNSEL, NADINE WICHERN; | ) | |
| KENCO LOGISTICS SERVICES LLC; JOHN | ) | |
| THACKER; ERIC MORITZ; MELISSA ROWCLIFF; | ) | |
| STEVE RASO; and AARON GILES, | ) | |
|     Respondents. | ) | |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the Illinois Human Rights Commission did not abuse its discretion in sustaining the dismissal of petitioner's charges of unlawful harassment, discrimination, and retaliation against his former employer.

¶ 2    Petitioner, Tony Brummett, filed charges of employment discrimination with the

Illinois Department of Human Rights (Department) against his former employer, Kenco

Logistics Services, LLC (Kenco). In charge No. 2019-SF-0645, petitioner alleged unlawful harassment, discrimination, and retaliation against Kenco. In charge No. 2019-SF-0736, petitioner alleged Kenco discharged him based on unlawful discrimination and retaliation. The Department dismissed petitioner's charges, and the Illinois Human Rights Commission (Commission) sustained the Department's dismissal.

¶ 3       Petitioner appeals, arguing the Commission erred in sustaining the dismissal of his charges. We docketed petitioner's appeal in charge No. 2019-SF-0645 as No. 4-20-0451 and petitioner's appeal in charge No. 2019-SF-0736 as No. 4-20-0452. We have consolidated petitioner's cases for review. We affirm.

¶ 4                    I. BACKGROUND

¶ 5                    A. Charges

¶ 6                    1. *Charge No. 2019-SF-0645*

¶ 7       In November 2018, pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2016)), petitioner filed four charges with the Department. Petitioner alleged (1) Kenco harassed him from September 6, 2018, to October 30, 2018, due to his race (black), where Kenco instructed other employees to watch him and report back if he did anything "out of character" (count A); (2) Kenco harassed him from September 6, 2018, to October 30, 2018, in retaliation for making an internal complaint in August 2018 regarding harassment by an unnamed supervisor and for filing a previous charge with the Department in charge No. 2019-SF-0327 (count B); (3) Kenco in October 2018 subjected him to unequal terms and conditions of employment due to his race (count C); and (4) Kenco in October 2018 subjected him to unequal terms and conditions of employment in retaliation for him opposing unlawful discrimination (count D). As to counts C and D, petitioner alleged Kenco (1) required him to

- 2 -

change his written response to a performance improvement plan (PIP) despite his belief his work performance met Kenco's expectations and (2) told him to collect and review safety checklists from his subordinates at the beginning of the work shift although such instruction violated Kenco's policy.

¶ 8                                    2. *Charge No. 2019-SF-0736*

¶ 9            In November 2018, pursuant to the Act, petitioner filed two more charges with the Department.  Petitioner alleged Kenco discharged him on November 2, 2018, (1) based on his race where his performance met Kenco's expectations (count A) and (2) in retaliation for making an internal complaint in August 2018 regarding harassment by an unnamed supervisor and for filing previous charges with the Department in charge No. 2019-SF-0327 and charge No. 2019-SF-0645, where his performance met Kenco's expectations (count B).

¶ 10                      B.  Department's Investigation and Recommendation

¶ 11                                    1. *Charge No. 2019-SF-0645*

¶ 12            In October 2019, the Department prepared an "Investigation Report" on petitioner's allegations, which revealed the following.  Kenco is a third-party logistics company providing warehousing and logistics support services to other businesses.

¶ 13            In June 2018, John Thacker, Kenco's general manager, hired petitioner for the position of operations supervisor at Kenco's facility in Decatur, Illinois.  In his role at Kenco, petitioner supervised approximately 25 individuals working second shift.  Thacker supervised petitioner until August 2018, when Eric Moritz, operations manager, replaced Thacker as petitioner's immediate supervisor.  Thacker stated petitioner's "performance had been lacking from almost the start.  He and Moritz had been noting [petitioner's] poor performance."  Specifically, Thacker noted petitioner "was having issues doing his job properly from almost the

- 3 -

beginning of his employment, as well as problem[s] working with other employees." Both Thacker and Moritz are white, and petitioner is black.

¶ 14        On September 5, 2018, Kenco issued petitioner a PIP, dated August 30, 2018. Petitioner did not agree with the PIP's evaluation of his performance which indicated he needed improvement. On two separate occasions, September 10, 2018, and October 22, 2018, petitioner refused to sign the PIP. After Kenco issued petitioner the PIP on September 5, 2018, Steve Raso, network human resource manager, told petitioner to go home and think about what he would like to do, so petitioner left work.

¶ 15        On September 6, 2018, petitioner filed charge No. 2019-SF-0327 with the Department alleging discrimination. That charge was eventually dismissed, and the Commission affirmed the dismissal. This court affirmed the Commission's dismissal in *Brummett v. Illinois Human Rights Comm'n*, 2021 IL App (4th) 200056-U.

¶ 16        Also, on September 6, 2018, petitioner went to his doctor, who prescribed him medication and advised him to take a few days off work. Petitioner e-mailed Raso and informed him he planned to take a few days off. Petitioner also informed Raso he filed a charge with the Department. Raso told petitioner he could take a few days off.

¶ 17        On September 10, 2018, petitioner returned to work. When petitioner returned to work, he filled out the employee section of the PIP. In the employee section, petitioner stated, "in his opinion, there was nothing wrong with his performance. He stated that he was doing just as good as all of the other white Operation Supervisors who started at the same time as him***. [Petitioner] stated that if he was placed on a PIP, they should have been too. [Petitioner] stated that because of that, he disagreed with the PIP." Petitioner refused to sign the PIP. Petitioner e-mailed his response to the PIP to Raso, Thacker, and Moritz.

¶ 18     After petitioner e-mailed his response to the PIP to Raso, Raso told him "he did not like the way [petitioner] had responded to the PIP." Raso told petitioner to respond differently. Petitioner refused to change his response.

¶ 19     Petitioner also alleged that when he returned to work on September 10, 2018, Aaron Giles, lead worker, disrespected him. Further, petitioner alleged that on September 22, 2018, Moritz yelled at him in front of his associates, which petitioner found disrespectful. Petitioner never alleged anyone made racial comments to him or made remarks to him about his prior complaints.

¶ 20     Also, in mid-September, petitioner alleged Moritz and Thacker both started "ignoring him." Petitioner also believed Moritz intentionally "locked" a cart that he needed to use to get from place to place at Kenco.

¶ 21     In October 2018, petitioner met with Raso and Eddie Register, owner, to go over his PIP. Petitioner alleged Raso tried to "coach" petitioner on how to respond to the PIP. Petitioner submitted an additional response to the PIP stating, "he was meeting expectations and how he was currently doing a good job." Petitioner again refused to sign the PIP.

¶ 22     Raso stated a PIP is created "to try to help an employee succeed." Specifically, a PIP is not considered discipline, but rather a tool to help the employee and company work together on a plan. Raso alleged Thacker expressed concerns with petitioner's work in July 2018 and they thought placing him on a PIP would help him improve.

¶ 23     Raso stated "he was spoon feeding" petitioner on how to answer the PIP. However, petitioner "believed his first response was correct, in that he was doing nothing wrong." Raso also stated he gave out several PIPs during the same time period. David Allen,

operation supervisor, Dwyane Morley, operation supervisor, and Moritz all received PIPs based on their performance. All three men are white.

¶ 24 Also, in October 2018, Korey Brisch, safety supervisor, told petitioner he wanted him to turn in safety inspection checklists at the beginning of the shift as opposed to at the end of the shift. Petitioner declined to change how he submitted safety checklists because he thought it violated Kenco's company policy. Petitioner alleged Brisch "yelled at him in front of his associates that he was reporting this to Thacker."

¶ 25 Brisch stated that he informed petitioner the safety inspection checklists needed to be distributed at the beginning of a shift, but petitioner refused to sign off or comply. Brisch told petitioner such practice was not in violation of any policy. When petitioner failed to comply, Brisch documented his interaction with petitioner and e-mailed it to Moritz and Raso. Brisch stated "no mention was made to [petitioner's] race at any time, and he did not know that [petitioner] had filed a charge with [the Department]."

¶ 26 On October 29, 2018, several employees told petitioner that they had heard Kenco was instructing employees to watch petitioner and report any behavior that was "out of character." In response, petitioner e-mailed Raso. Raso instructed petitioner to take a few days off work while Raso investigated. On October 31, 2018, Raso and Marti Donovan, human resource business partner, called petitioner at home and asked him questions about his allegation of the "out of character" behavior watching. On November 2, 2018, Raso notified petitioner in an e-mail "that he had not found any evidence to corroborate the allegation."

¶ 27 Raso stated that during September and October 2018, petitioner contacted him several times about things "not being fair." Raso asserted that petitioner "was just not happy with what was occurring with the PIP and coworkers, it was a 'common theme' with petitioner."

Raso never observed any discrimination toward petitioner based on race or retaliation. Raso reaffirmed that he investigated the rumor about other employees watching petitioner for any "out of character" behavior but did not find any evidence that this occurred.

¶ 28 Thacker stated only he and Moritz gauged petitioner's behavior. Thacker asserted that either petitioner or someone else "fabricated" the rumor about watching petitioner's behavior.

¶ 29 Based on the information compiled in its investigation report, the Department recommended all counts be dismissed based on a lack of substantial evidence.

¶ 30 2. *Charge No. 2019-SF-0736*

¶ 31 In October 2019, the Department prepared an "Investigation Report" on petitioner's allegations, which revealed the sequence of events described in charge No. 2019-SF-0645 above and the following.

¶ 32 On October 30, 2018, petitioner filed charge No. 2019-SF-0645 with the Department. On November 2, 2018, Kenco discharged petitioner for non-compliance with the PIP process.

¶ 33 As related to discharge, in September 2018, Raso provided the PIP to petitioner and informed petitioner, "if not successful with the PIP, termination could happen." Raso also explained to petitioner what was expected from him. After petitioner refused to sign or comply with the PIP, as outlined above, Raso, by e-mail, notified petitioner of his discharge and sent him a letter of termination. Raso stated, "Allen and Moritz were later terminated for not successfully completing the PIP process." Raso alleged petitioner never complained of racial harassment or retaliation, just that he "did not feel it was fair and in general he was not being treated fairly." At the time of petitioner's termination, Kenco was aware of petitioner's first charge with the

- 7 -

Department (charge No. 2019-SF-0327), but it was not aware of his second charge with the Department (charge No. 2019-SF-0645).

¶ 34    Based on the information compiled in its investigation report, the Department recommended all counts be dismissed based on a lack of substantial evidence.

¶ 35                            C. Commission's Order

¶ 36                            1. *Charge No. 2019-SF-0645*

¶ 37    In January 2020, petitioner filed a timely request for review with the Commission. In February 2020, the Department filed a response to petitioner's request for review. In March 2020, petitioner filed a reply to the Department's response.

¶ 38    In August 2020, the Commission entered a written order sustaining the Department's dismissal for lack of substantial evidence. In its order, the Commission found the following.

¶ 39    As to counts A and B, petitioner argued he was harassed because of his race (black) and in retaliation for filing the previous charge. However, the Commission found both counts failed, as none of the allegations showed animus towards petitioner based on race or in retaliation. The Commission further stated,

> "[E]ven taking Petitioner's allegations as true, the complained-of
> actions do not meet the legal standard for harassment. Harassment
> must be so severe or pervasive that it alters the conditions of
> employment and creates an abusive working environment. *Harris*
> *v. Forklift Sys., Inc.*, 510 U.S. 17, 20, (1993). Whether an
> environment is 'hostile' or 'abusive' can be determined only by
> looking at all the circumstances, including 'the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance' *Id.* at 23. Petitioner alleges isolated incidents of hostility from Moritz and Thacker, who supervised him, but heavy-handed management does not constitute harassment. *Patel v. Allstate Insurance*, 105 F.3d 365, 373 (7th Cir. 1997); *In re Request for Review of Zoie Reneau,* IHRC, ALS 16-0059, 2019 WL 3048672 (June 11, 2019). The last incident (that employees had been instructed to report to Employer if Petitioner did something 'out of character') is not harassment but typical management, given the context that Employer was already displeased with Petitioner's performance and had issued the PIP."

¶ 40    As to count C, petitioner alleged he was issued the PIP and accused of submitting safety checklists incorrectly because of his race. The Commission stated,

"To present a *prima facie* case, Petitioner must show: 1) he is a member of a protected class; 2) he was performing his work satisfactorily; 3) he was subject to an adverse action; and 4) the Employer treated a similarly situated employee outside his protected class more favorably under similar circumstances. *Marinelli v. Illinois Human Rights Comm'n*, 262 Ill. App. 3d 247, 253-54[, 634 N.E.2d 463, 469] (***1994). Count C fails at the third prong. Adverse action must be 'more disruptive than a mere

- 9 -

inconvenience or an alteration of job responsibilities,' such as

termination, decrease in wages, or material loss of benefits.

*Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002); *In re Request*

*for Review of Gene A Willingham*, IHRC, ALS 16-362, 2019 WL

2024323 (Apr. 10, 2019).  Examples of adverse action include

hiring, firing, failure to promote, reassignment with significantly

different responsibilities, or a significant change in benefits.

*Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st)

112204, ¶ 35[, 974 N.E.2d 385].  Negative performance

evaluations, standing alone, do not qualify.  *Smart v. Ball State*

*Univ.*, 89 F.3d 437, 441-42 (7th Cir. 1996).  The same would apply

to being accused of submitting safety checklists incorrectly."

¶ 41        As to count D, petitioner alleged he was issued the PIP and accused of submitting

safety checklists incorrectly in retaliation for filing his previous charge with the Department in

charge No. 2019-SF-0327.  The Commission found,

"A *prima facie* case of retaliation requires evidence that the

Petitioner engaged in a protected activity, that they suffered an

adverse action, and that there is evidence of a causal connection

between the protected activity and the adverse action.  See *Welch*

*v. Hoeh*, 314 Ill. App. 3d 1027, 1035[, 733 N.E.2d 410, 416]

(*** 2000).  The standard for adverse action is lower for a

retaliation claim than a claim of discrimination based on a

protected class.  *Hoffelt v. Illinois Dep't of Human Rights*, 367 Ill.

- 10 -

App. 3d 628, 635-36[, 867 N.E.2d 14, 19-20] (*** 2006). If the Petitioner presents a *prima facie* case, the Employer must then produce a legitimate, nondiscriminatory reason for its action, and Petitioner must prove that this reason is a pretext for discrimination. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 179[, 545 N.E.2d 684, 687-88] (1989).

Assuming that Petitioner presented a *prima facie* case, Employer proffers that it issued the PIP because his work performance was poor, and accused him of submitting safety checklists incorrectly because he had misunderstood Employer's policy. Petitioner has not presented any evidence that these reasons were pretextual. See *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir. 1994) ('A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence.'). The Commission does not sit as a 'super-personnel department' to examine an employer's business decisions, even if those decisions seem 'high-handed' or 'mistaken.' *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (citations omitted)."

¶ 42    Ultimately, the Commission found petitioner failed to present sufficient evidence to show the Department's dismissal of the charges was not in accordance with the Act.

¶ 43                      2. *Charge No. 2019-SF-0736*

- 11 -

¶ 44    In January 2020, petitioner filed a timely request for review with the Commission. In February 2020, the Department filed a response to petitioner's request for review. In March 2020, petitioner filed a reply to the Department's response.

¶ 45    In August 2020, the Commission entered a written order sustaining the Department's dismissal for lack of substantial evidence. In its order, the Commission found the following.

¶ 46    As stated above in charge No. 2019-SF-0645, the Commission described the evidence petitioner needed to present a *prima facie* case of racial discrimination (count A) and retaliation (count B). Then, the Commission found as follows:

> "Here, Employer proffers that Petitioner was discharged because, despite their encouragement, Petitioner refused to participate in the PIP process. Petitioner and Employer agree that Petitioner would not acknowledge any deficiencies in his work, and he therefore would not follow Employer's instructions to sign the PIP and comply with it. This constitutes a legitimate, nondiscriminatory reason for the discharge, and Petitioner has not proven that his was pretextual. In his Request (and the attendant Reply), Petitioner merely reiterates the same evidence he already alleged in ALS Nos. 19-0402 and 20-0028 [charge No. 2019-SF-0327 and charge No. 2019-SF-0645]. He strongly disagrees with Employer's evaluation of his work, but has not proven that Employer's actions were motivated by racial animus or a desire to retaliate. See *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir.

- 12 -

1994) ('A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence.'). The Commission does not sit as a 'super-personnel department' to examine an employer's business decisions, even if those decisions seem 'high-handed' or 'mistaken.' *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (citations omitted)."

¶ 47 Ultimately, the Commission found petitioner failed to present sufficient evidence to show the Department's dismissal of the charges was not in accordance with the Act.

¶ 48 Following the Commission's orders, petitioner appealed to this court. See Ill. S. Ct. R. 335(a) (eff. July 1, 2017); 775 ILCS 5/8-111(B)(1) (West 2018) ("Any [petitioner] or respondent may apply for and obtain judicial review of a final order of the Commission entered under this Act by filing a petition for review in the Appellate Court.").

¶ 49 This appeal followed.

¶ 50 II. ANALYSIS

¶ 51 On appeal, petitioner argues this court must reverse the Commission's orders sustaining the dismissal of his charges because he presented substantial evidence of unlawful harassment, discrimination, and retaliation. The Commission argues it did not abuse its discretion in sustaining the Department's dismissal of petitioner's charges based on a lack of substantial evidence. We agree with the Commission.

¶ 52 A. The Act and Standard of Review

¶ 53 The Act provides it is a civil rights violation for an employer "to act with respect to *** discharge [or] discipline *** on the basis of unlawful discrimination." 775 ILCS

- 13 -

5/2-102(A) (West 2018). "Unlawful discrimination" means, in part, discrimination against a person because of that person's race, color, ancestry, or sex. *Id.* § 1-103(Q). It is also a civil rights violation to "[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination." *Id.* § 6-101(A). Where "a civil rights violation allegedly has been committed, a charge *** may be filed with the Department by an aggrieved party." *Id.* § 7A-102(A)(1). Once a charge has been filed, "the Department shall conduct an investigation sufficient to determine whether the allegations set forth in the charge are supported by substantial evidence." *Id.* § 7A-102(C)(1). If not supported by substantial evidence, the charge must be dismissed, and the petitioner must be informed of his right to seek review of the dismissal order before the Commission. *Id.* § 7A-102(D)(3). If the Commission sustains the dismissal, the petitioner may appeal directly to this court from the Commission's order. *Id.* § 8-111(B)(1); Ill. S. Ct. R. 335(a) (eff. July 1, 2017).

¶ 54　　　　This court reviews the Commission's order for an abuse of discretion. *Young*, 2012 IL App (1st) 112204, ¶ 32. "Under the abuse of discretion standard, the court should not disturb the Commission's decision unless it is arbitrary or capricious" or "where no reasonable man could agree with the position of the [Commission]." *Id.* ¶ 33. "A decision is arbitrary or capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.*

¶ 55　　　　　　　　　　B. Employment Discrimination Generally

¶ 56　　　　When analyzing employment discrimination charges brought under the Act, we follow the framework set forth in federal case law relating to federal anti-discrimination statutes, including, as relevant here, Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C.

- 14 -

§ 2000e *et seq.* (1982)).  See *Zaderaka*, 131 Ill. 2d at 178 (stating claims under the Human Rights Act are to be evaluated in accordance with federal decisions interpreting federal anti-discrimination laws).

¶ 57    Discrimination can be proved through either direct or indirect evidence.  *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 536, 736 N.E.2d 1150, 1157 (2000).  Direct evidence of discrimination is evidence an employer "placed substantial reliance" on a prohibited factor—such as petitioner's race, age, or disability—in making its employment decision.  See *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790, 755 N.E.2d 51, 65 (2001).  Where, as in these cases, direct evidence is not available, the petitioner may use indirect evidence.  *Sola*, 316 Ill. App. 3d at 536.

¶ 58    To prove discrimination indirectly, Illinois courts follow the three-part test announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and adopted by the Illinois Supreme Court in *Zaderaka*, 131 Ill. 2d at 178-79.  The employee must first establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination.  *Zaderaka*, 131 Ill. 2d at 178-79.  If the employee establishes a *prima facie* case, a rebuttable presumption arises that the employer unlawfully discriminated against the employee, which the employer may rebut by providing a legitimate, nondiscriminatory reason for its adverse employment decision.  *Id.* at 179.  Finally, if the employer rebuts the presumption, the employee must prove by a preponderance of the evidence that the employer's proffered reason was merely pretext for unlawful discrimination.  *Id.*

¶ 59    C.  Charge No. 2019-SF-0645

¶ 60    In charge No. 2019-SF-0645, the Commission sustained the Department's dismissal of petitioner's charges where he failed to present substantial evidence of unlawful

harassment, discrimination, or retaliation under any of the four counts.  We review each count in turn.

¶ 61                                              1. *Harassment*

¶ 62          We turn first to petitioner's harassment claims (counts A and B).  Petitioner argues the Commission abused its discretion when it sustained the dismissal of his harassment claims.  Specifically, petitioner alleged he was harassed (1) due to his race where Kenco instructed other employees to watch him and report back if he did anything "out of character" and (2) in retaliation for making an internal complaint in August 2018 about harassment by an unnamed supervisor and for filing a previous charge with the Department in charge No. 2019-SF-0327.

¶ 63          For a claim of harassment to be actionable, petitioner must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by anti-discrimination laws; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) a basis for employer liability.  *Smith v. Illinois Department of Transportation*, 936 F.3d 554, 560 (7th Cir. 2019).

¶ 64          Here, the Commission did not abuse its discretion in sustaining the dismissal of petitioner's harassment claims because petitioner's allegations failed to show animus toward petitioner based on race or in retaliation.  We agree with the Commission that even taking petitioner's allegations as true, the complained of actions did not rise to the level of harassment. The Commission reasoned that even if the incident petitioner alleged where he heard a rumor that Kenco instructed employees to watch petitioner and report back if he did something "out of character" was taken as true, it did not constitute harassment but rather typical management.

Specifically, the Commission reasoned given Kenco's displeasure with petitioner's performance and its issuance of a PIP, this management style did not amount to harassment.

¶ 65    Further, during the Department's investigation into petitioner's claims of harassment, petitioner alleged in addition to the rumor, that he experienced isolated incidents of harassment. Specifically, (1) Giles disrespected him; (2) Moritz "yelled" at him in front of other employees; (3) Moritz and Thacker ignored him; and (4) Moritz locked a cart that petitioner needed to use. The Commission found these "isolated incidents of hostility" by his supervisors were incidents of heavy-handed management that did not constitute harassment. Petitioner never alleged anyone made racial comments to him or took actions based on his race. While petitioner may have found others' actions disrespectful, he failed to present any evidence those actions were motivated by race or in retaliation for filing another charge with the Department. Accordingly, we find no abuse of discretion where the Commission sustained the dismissal of petitioner's harassment claims.

¶ 66    2. *Unequal Terms and Conditions of Employment*

¶ 67    We turn next to petitioner's claims he was subjected to unequal terms and conditions of his employment on the basis of race (count C) and in retaliation for engaging in protected activities (count D) where Kenco (1) required him to change his written response to the PIP despite his belief his work performance met Kenco's expectations and (2) told him to collect and review safety checklists from his subordinates at the beginning of the work shift although such instruction violated Kenco's policy.

¶ 68    a. Discrimination

¶ 69    "To establish a *prima facie* case of employment discrimination, the petitioner must first show that (1) he is a member of a protected class; (2) he was meeting his employer's

legitimate business expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably." *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 919, 936 N.E.2d 623, 640 (2010). "A materially adverse employment action is 'one that significantly alters the terms and conditions of the employee's job' " and "include[s] things such as hiring, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Id.* at 919 (quoting *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004).

¶ 70    Here, the Commission did not abuse its discretion in sustaining the dismissal of petitioner's discrimination claim because he did not suffer an adverse employment action. The Commission found negative performance evaluations and being accused of submitting safety checklists incorrectly were not tantamount to denial of promotion, reassignment with significantly different job responsibilities, substantial change in benefits, or termination. See *Smart*, 89 F.3d at 442. Petitioner's job responsibilities remained the same.

¶ 71    Further, Raso stated a PIP is created "to try to help an employee succeed." Specifically, a PIP is not considered discipline, but rather a tool to help the employee and company work together on a plan for improvement. Based on Thacker and Moritz's observations of petitioner's work, it was determined a PIP was necessary to help petitioner improve—not to discipline him. Raso also stated he gave out several PIPs during the same time to other employees. Allen, Morley, and Moritz all received PIPs based on their performance. All three men are white. In addition, petitioner never alleged anyone made racial comments to him.

¶ 72    Accordingly, we find the Commission did not abuse its discretion when it sustained the dismissal of petitioner's racial discrimination claim.

¶ 73                                    b. Retaliation

¶ 74            In order to establish a *prima facie* case of retaliation under the Act, petitioner

must show: (1) he was engaged in a protected activity; (2) his employer committed a material

adverse act against him; and (3) a causal nexus existed between the protected activity and the

adverse act. *Hoffelt*, 367 Ill. App. 3d at 633. As noted in the Commission's order, the standard

for determining whether an employer's act is "materially adverse" is less demanding in

retaliation cases than discrimination cases. See *id.* at 635-36.

¶ 75            As stated above, the Commission found negative performance evaluations and

being accused of submitting safety checklists incorrectly did not amount to an adverse

employment action. However, we agree with the Commission that even assuming, *arguendo*,

petitioner established a *prima facie* case of retaliation, Kenco rebutted the presumption of

retaliation with legitimate, nondiscriminatory reasons for its actions. Specifically, Thacker stated

petitioner's "performance had been lacking from almost the start. He and Moritz had been

noting [petitioner's] poor performance." Thacker disclosed petitioner "was having issues doing

his job properly from almost the beginning of his employment, as well as problem[s] working

with other employees." In response, Kenco created a PIP for petitioner to try and help petitioner

succeed and improve. Raso stated petitioner submitted a response to the PIP asserting he did not

agree with the PIP's evaluation of his performance and there was nothing wrong with his

performance. Petitioner refused to sign the PIP. Raso told him "he did not like the way

[petitioner] had responded to the PIP." Raso told petitioner to respond differently. Petitioner

refused to change his response. Petitioner never alleged anyone made comments to him about

his previous complaints.

- 19 -

¶ 76        Brisch stated he told petitioner he wanted him to turn in safety inspection checklists at the beginning of the shift as opposed to how he did it at the end of the shift. Petitioner declined to sign off or change how he submitted safety checklists because he thought it violated Kenco's company policy. Brisch told petitioner such practice was not in violation of any policy. When petitioner failed to comply, Brisch documented his interaction with petitioner and e-mailed it to Moritz and Raso. Brisch stated "no mention was made to [petitioner's] race at any time, and he did not know that [petitioner] had filed a charge with [the Department]."

¶ 77        In turn, petitioner failed to provide any evidence Kenco's cited reasons for issuing the PIP and asking him to submit safety checklists at the beginning of the shift were pretextual. Accordingly, we find the Commission did not abuse its discretion when it sustained the dismissal of petitioner's retaliation claim.

¶ 78                              D. Charge No. 2019-SF-0738

¶ 79        In charge No. 2019-SF-0738, the Commission agreed with the Department that petitioner failed to present substantial evidence to show he was discharged based on race (count A) or in retaliation for making an internal complaint in August 2018 regarding harassment by an unnamed supervisor and for filing previous charges with the Department in charge No. 2019-SF-0327 and charge No. 2019-SF-0645 (count B). We will review these claims, as the Commission did, under the same discrimination and retaliation standards set forth above.

¶ 80        Here, the Commission did not abuse its discretion in sustaining the dismissal of petitioner's claims he was discharged based on race or in retaliation. Even assuming, *arguendo*, petitioner established a *prima facie* case of discrimination and retaliation, Kenco rebutted the presumption of discrimination and retaliation with legitimate, nondiscriminatory reasons for its actions. Specifically, Kenco discharged petitioner based on his refusal to participate in the PIP

process. Petitioner refused to acknowledge any deficiencies in his work, and therefore declined to follow Kenco's instructions to sign the PIP and comply with it. Instead, petitioner maintained his work met company expectations and he was currently doing a good job. However, Thacker stated petitioner's "performance had been lacking from almost the start" and Thacker and Moritz both noted petitioner's poor performance. In response, Kenco created a PIP for petitioner to try and help petitioner succeed and improve. Raso informed petitioner "if he was not successful with the PIP, termination could happen." Petitioner continued to refuse to sign the PIP or comply with the PIP process.

¶ 81        In turn, petitioner failed to provide any evidence Kenco's reasons for discharging him were pretextual. While petitioner strongly disagreed with Kenco's evaluation of his work, petitioner failed to prove Kenco's actions were motivated by racial animus or a desire to retaliate. Raso stated petitioner never complained of racial discrimination or retaliation, just that he "did not feel it was fair and in general he was not being treated fairly." The Commission stated in its order, and we agree, the Commission "does not sit as a 'super-personnel department' to examine an employer's business decisions, even if those decisions seem 'high-handed' or 'mistaken.' " See *Millbrook*, 280 F.3d at 1181.

¶ 82        Moreover, the evidence showed that after petitioner's dismissal, two other employees, Allen and Moritz, were also terminated for not successfully completing the PIP process. Both men are white. Also, at the time of petitioner's termination, Kenco acknowledged it was aware of petitioner's first charge with the Department in charge No. 2019-SF-0327, but it was not aware of his second charge with the Department in charge No. 2019-SF-0645. Based on the evidence, we find the Commission did not abuse its discretion when it sustained the

Department's dismissal for lack of substantial evidence because the evidence failed to show petitioner was discharged based on race or in retaliation.

¶ 83                                      III. CONCLUSION

¶ 84          For the reasons stated, we affirm the Commission's order.

¶ 85          Affirmed.